## GUY H. FULLER v. JAMES GOODNOW.[1]

Aug. 6, 1895.

Nos. 9525—(199).

**Promissory Note—Bona Fide Purchaser.**

Held, in an action brought by an alleged indorsee of a promissory note against its maker, that the evidence was insufficient to justify the special findings of the jury that the plaintiff purchased the note before maturity, in good faith, without notice or knowledge of a defense, and for value.

**Same—Fraud—General Verdict—Special Findings.**

It was alleged in the answer, as a defense, that the note in question was obtained from defendant by the payee's false and fraudulent statements and representations, and was without consideration; and there was evidence upon the trial which would have warranted a verdict for defendant upon this branch of the case. Appended to the above-mentioned special findings was a general verdict in plaintiff's favor. Held, taking the charge of the court as a whole, that the effect was to conditionally withdraw from the jurors all consideration of the defense of fraud and deceit, and consequently that a finding on that question against defendant was not involved in the general verdict.

Action in the district court for Hennepin county. The case was tried before Smith, J., and a jury, which rendered a general verdict in favor of plaintiff, and also returned certain special findings referred to in the opinion. A motion by defendant for a new trial, on the ground that the verdict was not justified by the evidence and was contrary to law, and on the ground of error in law occurring at the trial and excepted to by defendant and of excessive damages, was denied. From a judgment entered pursuant to the verdict in favor of plaintiff for $5,826.76, defendant appealed. Reversed.

T. E. Byrnes, for appellant.

James I. Best and James Schoonmaker, for respondent.

COLLINS, J.[2] This was an action on a promissory note executed and delivered by defendant, payable to the order of one Dick-

---

[1] Reported in 64 N. W. 161.          [2] Buck, J., took no part.

son, and by him alleged to have been sold and indorsed to plaintiff before maturity and for value received. The answer denied the transfer to plaintiff before maturity or for value. To the contrary, it alleged that plaintiff was not a purchaser of the note at any time, that Dickson was and is the owner, and that the transfer and indorsement to plaintiff was and is colorable, and done .for the sole purpose of preventing defendant from asserting that the execution and delivery of the note was without consideration, of which fact plaintiff had full knowledge when he received it. The answer then alleged that the note was fraudulent at its inception, and that defendant had been induced to execute and deliver it to Dickson, the payee, by means of certain false and fraudulent statements and representations made by the latter, upon which defendant relied, which statements and representations were specified, and their false and fraudulent character averred.

At the trial there was considerable evidence as to the transaction, a patent-right sale, in which Dickson obtained the note, and on this point the evidence was, to say the least for it, sufficient to have supported a finding by the jury that the note was without consideration, and was fraudulently obtained from the maker. When charging the jury, the court took up the defenses in a certain order, first referring to one not involved in this appeal. It then passed to the claim that plaintiff was not a purchaser for value or in good faith before maturity, and charged that if, from the evidence, the jury should find that he did not purchase the note before maturity, or did not pay a valuable consideration, or that he had notice, or could have ascertained by the exercise of reasonable care and diligence that there was a defense to it, they should then proceed to inquire and determine whether it was obtained from defendant through fraud and deceit. This statement was repeated several times in the course of the charge, once in this language: "But if you should find, as I have stated before, that the plaintiff did receive this note before maturity, for a valuable consideration, and without notice, then the plaintiff would be. entitled to recover, and you will not be required to go any further, but bring in a verdict for the plaintiff for the amount of the note and interest that is due on it. But if you find, as I have said before, that it was not transferred to him before maturity, for a valuable consideration, in good

faith, without notice, then you will proceed further and ascertain whether this note was obtained from the defendant by Dr. Dickson through deceit or fraud."

Finally, the court of its own motion submitted two questions for the jury to answer specifically, besides rendering a general verdict; and we can do no better than again to quote from the charge, beginning with the first question: "Did the plaintiff purchase the note of Samuel Dickson before it was due, in good faith and for value? If you should find that he did, then you will answer that 'Yes,' and you will bring in a verdict for the plaintiff for the full amount of the note with interest on it. You will find the form of the verdict at the bottom. If you should answer 'No,' then you should answer the next question: Did the plaintiff, at the time of the purchase, have any notice or knowledge of any defense by the defendant against this note? If you answer that question in the negative, then you will bring in a verdict for the plaintiff for the full amount of the note with interest computed and added. If you answer it in the affirmative, then you will determine whether or not there was any fraud,—whether the defendant has established his defense of fraud in this case. If he has, you will then return a verdict for the plaintiff or the defendant, as you find the difference between the value of the property that the defendant gave Dr. Dickson in exchange for this patent." The first of these questions, as to plaintiff's purchase in good faith, before maturity, and for value, was answered in the affirmative, and to the second, whether plaintiff had notice or knowledge of any defense when he purchased, a negative answer was returned. A general verdict was also rendered for the full amount appearing to be due.

The appellant contends that the evidence was insufficient to justify either of these special findings, and that it conclusively appeared from the proofs that plaintiff was not a purchaser in good faith, without notice, or for value. But, if this be true, it would be immaterial, and insufficient to justify a reversal of the judgment appealed from, after a motion for a new trial had been denied, if it appears that the question of fraud and deceit in the inception of the note was submitted to and considered by the jury. If by the general verdict it was found that the note was not fraudulently procured from the maker,—was given for a good consideration,—it is

of no consequence to defendant that plaintiff was not a bona fide purchaser for value, either before or after maturity.

We have stated the general tenor of the charge, and have quoted some parts of it. It is obvious that the question of fraud and deceit was given little or no consideration, and was lost sight of. Whenever referred to, it was given no importance, and the jury were repeatedly told that it was of no consequence, if plaintiff was a good-faith purchaser for value before maturity. If the jury found for plaintiff on these questions, they were instructed to go no further, but to return a general verdict against defendant. Evidently the jurors understood, from the oft-repeated statements of the court, that the question of fraud and deceit was not before them if they found against defendant on this prominently made feature of the trial and the charge. And this matter was further impressed upon them by the submission of the written questions, to which was appended the form of a general verdict for plaintiff. We are clearly of the opinion that, taking the charge as a whole, including the specific questions to which the court required categorical answers, in connection with the answers and the general verdict, that the effect was to conditionally withdraw from all consideration by the jury the question of fraud and deceit practiced upon defendant when the note was made, and therefore that the general verdict did not include a finding upon that question. The jury never considered or passed upon it at all. This being our conclusion, it follows that, if the special findings were unsupported by the evidence, the verdict should have been set aside and a new trial granted.

We will now proceed to state the facts, as they appeared on the trial, concerning the alleged sale and indorsement of the note to plaintiff. Dickson was an elderly man, with a residence at Westfield, New York. According to his testimony he was a "psycho-magnetic healer" of the sick, although he had patented several articles and had dealt largely in real estate. The plaintiff, Fuller, resided at Jamestown, about 30 miles from Westfield, and had known Dickson about 8 years when receiving the note. Fuller had been engaged in the publishing of a newspaper at Jamestown, but, being in poor health, had ceased work at the time of the transfer. Dickson and defendant, who resided at Minneapolis, in this state, met in San Francisco, California, in April, 1891, and it was then that the

note (for $5,000, due October 1, 1891, with 8 per cent. interest) was executed and delivered. In the month of July Dickson visited Minneapolis, and there unsuccessfully tried to discount the note. Why he failed does not clearly appear, for, as we understand the testimony, all parties concede that the defendant was abundantly able to pay all obligations. In the month of September plaintiff, Fuller, went to Westfield for medical treatment, his physician being one Cronin. While at Westfield he saw Dickson, and received one or two magnetic treatments at his hands. It was testified at the trial that Dickson then owed plaintiff for newspaper advertising about $475. He spoke to Dickson about needing money, at which the latter, according to his testimony, "accidentally" mentioned the note, and said, "If he had the money, we would be all right." Fuller made some inquiries, was assured by Dickson that defendant was worth more than $100,000, and stated that he thought a banker friend of his in a neighboring town would discount the paper. September 16, some 35 days before defendant's note fell due, it was agreed between the parties that Dickson should indorse the note to Fuller without recourse, and that, in consideration thereof, the latter should execute and deliver his own note for $4,740, payable to Dickson, on which, when the exact amount was ascertained, there should be indorsed as part payment the sum due from the latter to Fuller. This note was made and delivered to Dickson, who then indorsed defendant's note without recourse, and delivered it to the plaintiff. The next day the amount of indebtedness for advertising, $475.45, was indorsed by Dickson on Fuller's note. It was also agreed between the parties to this transaction that, if Fuller could discount the note with his friend, the banker, Dickson should receive a part of the money upon indorsing the amount received on the Fuller note. It does not appear that the necessities of either of these parties led Fuller to call upon his friend for a discount, but the defendant's note was promptly sent for collection, when due, to a Minneapolis bank, and by the bank in Westfield in which Dickson transacted his banking business.

It has been noticed that the details of the transaction through which Fuller claims to have been a good-faith purchaser for value are somewhat peculiar, and do not strike the ordinary man as being such as he would expect to find in a straightforward, honest

business transaction. Fuller was an invalid, away from home, and in the hands of a physician. He was or had been a newspaper man, not a banker or broker. Defendant was supposed by both Dickson and Fuller to be worth over $100,000, and in condition to promptly meet and discharge all pecuniary obligations. His note, on which there was due September 16, 1891, about $5,177, was regarded as first-class, and yet, 35 days before it matured, Dickson sold it for $4,740, taking Fuller's note for that amount, if the testimony is to be believed. By this arrangement defendant's note was discounted at only a trifle over 9 per cent. a month. It is evident, if Dickson actually suffered so great a loss that he might assist a friend in need of money, that he possessed much more kindness of heart than is usually found among men, or, possibly, that he lacked ordinary business capacity and ability. And it is apparent, if there was this discount, that the art of "shaving" notes in a truly scientific manner is not wholly confined to the frontier. And, notwithstanding this sacrifice, and plaintiff's pressing needs, which seem to have been the cause of it, the latter failed to make any effort to obtain the money from the banker, but sent the note on for collection to Minneapolis.

We think these facts afford clear, although possibly not absolutely convincing, proof that plaintiff was not a bona fide purchaser, or a purchaser at all. They indicate very strongly that the transfer to him was merely colorable, and for a manifest purpose. They tend to show that he knew or ought to have known that the note itself was of a questionable character, and that Dickson anticipated trouble in collecting it. But this was not all. At the trial it was shown by the plaintiff himself that, at and before the time of the alleged purchase, he was in financial trouble, and in enforced retirement from the newspaper business. Not far from the time that the note in suit was indorsed to him, he placed or tried to place his property beyond the reach of his creditors by giving a bill of sale of his newspaper plant to three of his employés. His business affairs were then in such shape that, within three months, in November, 1891, he was brought up for examination in proceedings supplementary to an execution issued upon a judgment against him for $30. He admitted upon the witness stand that, at this examination, he testified that by the bill of sale we have mentioned he

had conveyed all of his property, except an interest in some worth-less land in Tennessee.    And, in so far as the note in question is concerned, we think he told the truth when claiming, in these sup-plemental proceedings, that he had no means, and no property with which to satisfy the execution.

We do not hesitate in saying that the story as to the purchase of defendant's note by plaintiff, as told by Dickson and himself, was so inherently improbable that it should have been promptly rejected by the jury.    The evidence was insufficient to support the special findings, and, as a consequence, in the absence of any finding upon the question of fraud and deceit, the general verdict must fall.

Judgment reversed, and a new trial ordered.