## C. S. JOBES, Appellant, v. H. M. WILSON et al., Respondents.

### Springfield Court of Appeals, January 3, 1910.

1. BILLS AND NOTES: False Representations. Where an agent of the payee obtains the signature of defendant to certain notes in payment for a horse, upon the representation or promise that his principal will place certain credits thereon when the notes are sent in, and that in case the horse dies, a new horse will be sent or $1,000 paid in lieu thereof; this is not sufficient to establish fraud, without further proofs that the statements were false.

2. ———: ———: Instructions. Where there is no evidence that the representations made by the agent of the payee of a note in obtaining said note were false, it was error for the court to give an instruction submitting the question of the falsity of the representations to the jury.

3. ———: ———: ———. Where the question of false representations is in issue, an instruction is erroneous which ignores the question whether the defendants believed the representations to be true and relied on them.

4. ———: Failure of Consideration: Negotiable Instrument Law: Holder in Due Course. Section 28 of the Negotiable Instrument Law permits the defense of a total or partial failure of consideration against all persons except a holder in due course. A holder in due course is defined in section 52 of the same law.

5. ———: Fraud: Failure of Consideration: Burden of Evidence. Under the laws of the State as they existed prior to the Act of 1905, there was a difference as to the burden of evidence in cases where it was claimed the note was obtained by fraud and where it was claimed it was given without consideration. In the first case, when the defendant showed that the note was obtained by fraud, the burden of evidence was then on the holder to show that he acquired it in due course, but when the failure of consideration merely was proven, the burden of evidence would not shift but remained with the defendant to show the plaintiff was not a holder in due course.

6. ———: ———: ———: ———: **Negotiable Instrument Law.** Under the Act of 1905, the burden of evidence is the same whether the note was obtained through fraud or was given without consideration, and under sections 55 and 59 of said act it is upon the holder, after it is shown that the title of any person who negotiated the instrument is defective, to prove that he or some person under whom he claims acquired the title as a holder in due course.

7. ———: ———: ———: **Burden on Holder.** Where notes were obtained upon the representation that certain credits would be placed upon them, and they were negotiated without placing the credits thereon, this is an act of bad faith amounting to a fraud upon the makers of the notes, and when shown in a suit on the notes, throws the burden upon the plaintiff to show that he is an innocent purchaser or a "holder in due course."

8. ———: **Innocent Purchaser: Facts to be Considered by Jury.** The fact that plaintiff purchased the notes without recourse and at the time did not know any of the defendants and made no inquiry as to their financial condition except such as the statements made to him by the seller of the note, and purchased $3,500 worth of notes bearing six per cent interest for $1,600, are questions which the jury have a right to consider.

9. ———: ———: **Consideration Paid by Holder.** The payment of value for a negotiable paper is a circumstance which should be taken into account with other facts in determining the question of the bona fide of the consideration, and when full value is paid, is entitled to great weight. But the amount of discount on the purchase of a note and the inadequacy or unreasonableness of the price paid therefor is evidence of bad faith to be submitted to the jury.

10. **PLEADING: Representations: Separate Answers.** In a suit on notes where there are several defendants and the defenses relied on are certain statements made by the agent of the payee of the notes, but the statements were not the same to each defendant, separate answers should be filed setting up the true facts relied on.

Appeal from Christian Circuit Court.—*Hon, John T. Moore,* Judge.

REVERSED AND REMANDED.

*Milton Schwind* and *J. W. Hartley* for appellant.

(1)    Fraud, in the legal acceptation, can exist only where there were representations of existing or past existing facts.    It never consists in promises or agreements as to future conduct.    Instruction Number 1 given for respondents is a flagrant violation of this settled and salutary rule.    Morris v. McNahan, 75 Mo. App. 498; Nichols v. Stevens, 123 Mo. 117; Estes v. Shoe Co., 155 Mo. 588; Bullock v. Woodridge, 42 Mo. App. 361; Davidson v. Hobson, 59 Mo. App. 136; Poindexter v. McDowell, 110 Mo. App. 234; Crim v. Crim, 162 Mo. 553; Johnson v. Insurance Co., 93 Mo. App. 591.    (2) Instruction 1 for defendants was erroneous in that it assumed that the note was procured by fraud, and this was not admitted in the pleadings or at the trial. Wilkerson v. Eilers, 114 Mo. 245; Robertson v. Drane, 100 Mo. 273; Dulaney v. Sugar Refining Co., 42 Mo. App. 659; Merriwether v. Kansas City Cable Co., 45 Mo. App. 528; Gorham v. Railway, 113 Mo. 408.    (3) Assuming for argument that the issue of fraud was rightly submitted in defendants' instruction 1, the instruction is still fatally defective in not requiring a finding that defendants did not know the representations were false, but relied, and had a right to rely, on their being true. Wood v. Letton, 111 Mo. App. 51; Cement Co. v. Stewart, 103 Mo. App. 182.    (4)    The issue of fraud being improperly submitted, it was confusing, misleading and highly prejudicial to appellant to instruct that the burden was on him to exculpate himself of all knowledge of "fraud."    Holmes v. Farris, 97 Mo. App. 305; Investment Co. v. Fillingham, 85 Mo. App. 541; Keim v. Vette, 167 Mo. 399; Stewart v. Andes, 110 Mo. App. 247; Johnson v. McMurray, 72 Mo. 278; Banks v. Leeper, 112 Mo. App. 694; Crawford v. Johnson, 87 Mo. App. 483; Shirts v. Overjohn, 60 Mo. 305; Banking Co. v. Poplin, 129 Mo. App. 121, 108 S. W. 16.

*G. A. Watson* and *G. A. McCafferty* for respondents.

(1) Instruction No. 1 is a correct declaration of the law of this State. Hamilton v. Marks, 63 Mo. 167; Mayes v. Robinson, 93 Mo. 122; Donovan v. Fox, 121 Mo. 247; Campbell v. Hoff, 129 Mo. 324; Keim v. Vette, 167 Mo. 399; Bank v. Tinsley, 11 Mo. App. 502; Carson v. Porter, 22 Mo. App. 184; Leedom v. Fur. Co., 38 Mo. App. 435; Bank v. Pipkin, 66 Mo. App. 597. (2) The payee, Ream & Co., are bound by the false representations of the agent Guggie. Millard v. Smith, 119 Mo. App. 701. (3) Fraud being shown in the procurement of the notes, the burden is cast upon the plaintiff to show that he acquired the note in good faith, for value, in due course and under circumstances which create no presumption that he knew the facts which impeach the validity of the note. Henry v. Sneed, 99 Mo. 407; Johnson v. McMurray, 72 Mo. 278; Hahn v. Bradley, 92 Mo. App. 405; Brown v. Heffelmeyer, 74 Mo. App. 885.

GRAY, J.—This is a suit on a promissory note, dated April 2, 1906, for $1,067, due July 1, 1907, payable to A. J. Ream & Company, at the Bank of Nixa, Mo., and with interest at six per cent per annum before maturity, and eight per cent after maturity, payable annually, and signed by the respondents. On the note are the following endorsements: "April 2, 1906, paid $230.00. Without recourse, A. J. Ream & Co."

The appellant sued on the note in the Christian Circuit Court, and claimed that he bought the same in June, 1906, with two other notes of the same amounts, with the same credits endorsed thereon, and signed by the same parties. The answer of the defendants allege that the payees, through their agent, a Mr. Guggie, agreed to sell a standard-bred stallion for $3,200, to be represented by sixteen shares of stock of $200 per share, and if any of the said shares of stock remained unsold,

the payees would take the same; that it was further
agreed in case said stallion died within one year from
the date of delivery, the purchasers should have the
option of choosing another horse, or receiving $1,000
of insurance which the sellers carried on each of their
horses in a "blanket" policy; that it was further agreed
that the contract should be reduced to writing and de-
livered to said purchasers; that ten and one-half shares
of said stock were sold by the payees, through said
agent, to parties other than these defendants, for which
the said agent received for the payees, the sum of $2,100;
that one and one-half shares of said stock were not
sold and were retained by the sellers; that the remain-
ing four shares of stock, aggregating $800 were sub-
scribed for by the defendants; that on the 2nd day of
April, 1906, and after the said Guggie had received
the sum of $2,100 for the said payees, and after the said
agent had taken over the one and one-half shares of
stock, amounting to the sum of $300, he falsely and
fraudulently represented to the said defendants that
it was necessary for them to sign promissory notes for
the full amount of the purchase price of said stallion;
that the said notes would be sent to A. J. Ream & Co.
and that the note sued on in plaintiff's petition, would
be cancelled and returned to defendants; that the sec-
ond note for a like amount would be cancelled and re-
turned to the defendants and that a credit of $466 would
be placed upon the third note; and that relying upon
the false and fraudulent representations of said agent,
they were induced to sign the notes herein referred to.

They further alleged that the credits of $2,600
were never placed on said note; that the said two notes
were not cancelled; that the written contract was never
delivered; that the stallion so purchased died within
twelve months, and that the payees refused to furnish
another or pay the $1,000, and alleging that the said
notes were wholly without consideration and void, and
specially denying that plaintiff, before maturity of said

note, purchased the same in good faith for a valuable consideration. The reply was a general denial.

At the trial, the plaintiff, Jobes, testified in his own behalf, to the effect that he bought the notes for about $1,750 to $1,850; that he knew in a general way how the business of the payees was conducted; that is, that a horse would be sold in the neighborhood, and notes given for the purchase price; that he made no effort to ascertain the solvency of the signers, but relied upon his experience as a bank examiner, in buying that class of paper, but further stated he had some information from the result of an inquiry one of the payees had made. When he was asked if it did not strike him as a little peculiar, if the payees thought the note was good, to sign it without recourse, he answered, "No, it did not, especially in view of the facts in connection with the business." That he purchased the paper after the partnership between Ream & Co. had dissolved, and each had taken his part of the paper, and that the note was endorsed without recourse, for the reason that the partner who had surrendered his interest to the other, would not be liable.

The plaintiff resided in Kansas City, Mo., where the payees resided and had been in business. The makers of the paper were farmers in Christian county.

The defendant, Wilson, testified that Guggie told him that in the event the horse died, another horse would be furnished, or $1,000 would be paid; that he only agreed to take one-fourth of a share, which would be $50, and that one of the other payees, Mr. Beverage, took one-fourth of a share with him, and Guggie agreed to take their note for $100. But when the sale was put through, Guggie came round with notes for $3,200 and he told him he would not sign them, and he would have to make $100 note, but Guggie said: "You sign these notes and I will send them on to the office and have a $3,100 credit placed on them," but after he got their signatures, he took the three notes and had them

signed by the other parties, and when the horse died, the payees were notified that no horse would be furnished. On cross-examination, he testified that Guggie said he could not credit the notes and that he did not have the power to do that, but he would explain it to Reams and they would credit the notes.

The defendant, Brown, testified that he took one-half share, and when he did, he was told by Guggie that the horse was insured for $1,000, and if he died within three breeding seasons, another horse, or $1,000, just as he wished, would be furnished; that when he signed the notes, Guggie told him that when the notes were sent to Kansas City, the company would credit the notes for all that was paid, and that he (Brown) was not standing good for anybody else, because he had certificates showing how much each had.

W. A. Boyts, a defendant, testified that when he made inquiry as to why the parties were asked to sign a $3,200 note, that Guggie said he could not credit them, and that the company would credit them when they were sent in.

All the testimony showed that the parties were to have shares of stock at the rate of $200 per share for the interest they had in the animal, and there was abundant testimony to prove that Guggie represented to them that he did not have the power to credit the notes with the payments made, but the same would have to be done at Kansas City, and that he also agreed that in case the animal died within three breeding seasons, a new horse would be delivered, or $1,000 paid, at the option of the makers. There were eleven names signed to the note. The testimony is uncontradicted that $2,100 had been paid by the makers on the notes previous to the time Guggie took them to Kansas City, and that in addition thereto, certain shares of stock were unsold and that the payees were to take the same, and to that amount the purchase price of the stallion, which the makers of the note were to pay, was thereby

reduced. The horse died and the payees refused to furnish another animal or pay the $1,000. The agent took the notes to Kansas City and had a credit of $233 placed upon each one, but what was done with the balance of the cash paid on the notes at the time of their execution, the evidence does not disclose.

It is claimed that the makers had no right to rely upon the statement of the agent that, it was necessary for him to send the notes to Kansas City to have the full amounts credited thereon by the payees, and that the notes would be cancelled to the amounts of the payments.

In passing upon the question, whether or not persons were justified in relying upon the statement of agents, all surrounding facts and circumstances should be taken into consideration. According to the evidence, Mr. Guggie went into this community where these defendants were residing, and stayed for about three weeks. He interested them in the proposition of getting a standard bred stallion in their neighborhood, and informed them that the sellers of the animal would take an interest with them in the enterprise. The proposition was a fair one, and the payees were to become part owners with the purchasers, and therefore, it is not to be wondered that these honest and unsuspecting citizens accepted his statements as the truth, and relied upon them.

It may be admitted that his statement that he did not have authority to credit the $2,100 on the back of the notes, would not have deceived men accustomed to handling commercial paper, or men accustomed to dealing with and knowing the authority of agents, but the court decisions are full of cases where statements no more unreasonable than this, have been relied upon by people in the rural districts. When a man has gone into a farming community and obtained the confidence of citizens thereof, and obtained their hard earned money for nothing, the courts should not listen with

too willing ears to the cry, "they ought to have known better."

While there was abundant proof that certain statements were made by the agent of the payees and relied on by the defendants, there was no evidence that the statements were false. The respondents could not rest by proving that statements were made and that they relied on them, but it was necessary for them to prove that the statements were false.

The court, at the request of defendants, gave an instruction submitting to the jury the question of the falsity of the said representations, and as there was no evidence that the representations were false, the action of the court in giving this instruction was error, for which a new trial must be ordered. This instruction is wrong in another important particular. It entirely ignored the question whether the defendants believed the representations to be true and relied on them.

The answer, after alleging that the representations were made and that they were false, and that defendants relied on them and were deceived thereby, and that on account thereof, the note was fraudulently obtained, closes by stating, "the note was obtained without consideration." If the defendants should not be able to prove that the representations were false, yet according to the answer, the note was obtained without consideration, as the agent of the payees and the money to pay the same at the time it was executed.

What we have just said does not, under the evidence, apply to all the defendants. The defendant, Wilson, testified that the agent of the payees told him that when the notes reached the office of the payees, $3,100 would be credited on them, and there only would be left unpaid $100, and that this unpaid amount would be applied so that thirty-three and one-third dollars would be left unpaid on each note.

The defendant, Wade, testified that the said agent

told him that the money paid would be credited on the three notes, but he did not claim any one of the notes was to be paid in full and returned to the maker, but the notes would have credits on them showing who had paid for the stock subscribed.

No one of the defendants testified that out of the money paid to the agent of the payees, was the note sued on to be paid in full and returned to them, and therefore, under this evidence, the court could not submit the question of total failure of consideration at the time the notes were given.

When the suit is instituted by the payee against the maker, the right to plead a partial failure of consideration is not to be questioned. But when the suit is brought by a third person who has acquired the notes before maturity, the question whether the defense of a partial failure of consideration can be made, although the purchaser of the note, at the time he purchased the same, knew that the maker did not receive full consideration for its execution, is not so easily answered. The note sued on herein was executed after the negotiable instrument law of 1905 had taken effect, and we believe the provisions of that act settle the question in this State.

Section 28 of that act reads: "Absence or failure of consideration is a matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto*, whether the failure is an ascertained and liquidated amount or otherwise." This section permits the defense of a total or partial failure of consideration against all persons, but a holder in due course.

Section 52 defines a holder in due course to be a person who has taken an instrument upon the following conditions: "1. That it is complete and regular upon its face. 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. 3. That he

took it in good faith and for value.   4.   That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.   5. That he took it in the usual course of business."

Under the laws of this State as they existed prior to the act of 1905, there was a difference as to the burden of evidence in cases where it was claimed the note was obtained by fraud, and where it was claimed it was given without consideration.   In the first case, when the defendant showed that the note was obtained by fraud, the burden of evidence was then on the holder to show that he acquired it in due course, but when the failure of consideration merely was proven, the burden of evidence did not shift, but remained with the defendant to show that the plaintiff was not a holder in due course. [Hahn v. Bradley, 92 Mo. App. 399; Bank v. Rominee, 136 Mo. App. 57, 117 S. W. 105; Hamilton v. Marks, 63 Mo. l. c. 178.]   But by the act of 1905, we believe that the burden is the same in each case.   Section 59 of that act reads: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument is defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course."

It will be noticed that in all cases where the title of the person negotiating an instrument is defective, the burden is on the holder then to prove he acquired it in due course.   Section 55 defines a defective title as follows:   "The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument or any signature thereto, by fraud, duress or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

If the allegations of the answer are true, or if the

statements of the defendants as to what was to be done with the notes, are to be believed, then it was an act of bad faith, amounting to a fraud, on these defendants, as the term is defined in section 55, to negotiate these notes without placing the credits upon them, and therefore, the burden in this case will remain with the plaintiff, if on another trial, the defendants prove to the satisfaction of the jury their statements as to the circumstances under which they executed the notes. In our construction of the act of 1905, we are supported by the courts of other states. [Hodge v. Smith (Wis.), 110 N. W. 192; McKnight v. Parsons, 136 Ia. 390, 113 N. W. 858, 4 L. R. A. (N. S.) 718.]

In this case, the defendants all joined in one answer. The evidence shows that the statements made to them and relied upon by them, were not the same in all cases, and it seems to us if the cause is retried that separate answers should be filed according to the true facts relied upon.

The appellant insists, however, that notwithstanding the ability of the defendants to prove the allegations of their answer, that under all the evidence the plaintiff is a holder in due course as the term is now defined under the laws of this State. If we are right in our interpretation of the act of 1905, the burden will be upon him, if the defendants show the note was obtained by fraud, or that the consideration partly failed before he purchased it, to prove that he is an innocent purchaser without notice, or as the term is now used, "a holder in due course." And this will be a question for the jury. [Investment Co. v. Bruce, 136 Mo. App. 257, 111 S. W. 888; Bank of Rominee, 132 Mo. App. 57, 117 S. W. 105.]

As this case must be retried, we do not want to comment on the facts further than to say that the fact that the plaintiff purchased the note without recourse and at the time did not know any of the defendants, and made no inquiry as to their financial condition except such as the statements made to him by the

seller of the note, and with the further undisputed fact that he purchased $2,500 worth of notes bearing six per cent interest for $1,600, are questions which the jury have a right to consider. The payment of value for negotiable paper is a circumstance which should be taken into account with other facts in determining the question of the *bona fide* of the transaction, and when full value is paid, is entitled to great weight.] Bank of Diefendorf, 123 N. Y. 191.] But the amount of discount on the purchase of a note and the inadequacy or unreasonableness of the price paid therefor, is evidence of bad faith to be submitted to the jury. [Hugumin & Co. v. Hinds v. Weissgerber, 97 Mo. App. l. c. 353, 71 S. W. 479; Leavitt v. Taylor, 163 Mo. l. c. 171, 63 S. W. 385; Lay v. Wiseman, 36 Ia. 305; Dewit v. Perkins, 26 Wis. 451; Fuller v. Goodnow, 64 N. W. 161; Mec v. Carlson, 117 N. W. 1033; Jordan v. Grover, 33 Pac. 869.]

For the errors above specified, the judgment is reversed and the cause remanded for a new trial. All concur.