## Asbury v. Taube, et al.

(Decided December 10, 1912.)

### Appeal from Boone Circuit Court.

1. Bills and Notes—Check—Negotiation—Overdue.—A check drawn on Saturday and negotiated on the following Monday was not overdue.

2. Bills and Notes—Checks—Fraud—Defective Title.—The title of one obtaining a check by fraud is defective.

3. Bills and Notes—Checks—Fraud—Defective Title.—In an action for recovery on a check, evidence examined and held sufficient to show that the check was obtained by fraud.

4. Bills and Notes—Holder in Due Course—Burden of Proof.—Where the maker shows that the check sued on was obtained from him by fraud of the payee, it devolves on one to whom the check is negotiated by the payee to show that he acquired title as a holder in due course.

5. Bills and Notes—Checks—Fraud—Peremptory Instruction.—Where plaintiff, to whom a check was negotiated, showed that he took the check in good faith, and for value, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it, and the defendant introduced no evidence tending to show any facts or circumstances to the contrary, it was proper to peremptorily instruct the jury to find for the de- plaintiff.

D. E. CASTLEMAN for appellant.

S. W. TOLIN, JOHN S. GAUNT for appellees.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

Plaintiff, George Taube, brought this action against J. S. Asbury, the Farmers Bank of Petersburg, Kentucky, and S. Straus, to recover on a check for $200 drawn by Asbury·on the Farmers Bank and made payable to S. Straus. Straus was not before the court. The Farmers Bank paid the amount of the check into court, where it is now held pending the final determination of this suit. The defendant, Asbury, pleaded that the check was obtained from him by fraud, and that plaintiff, Taube, not only had knowledge thereof, but that he and defendant S. Straus were partners in the transaction, and that they had entered into a conspiracy to cheat and defraud defendant. The case as to defendant, Asbury, went to trial. At the conclusion of all the evidence, the court directed a verdict in favor of the plaintiff. To review the propriety of this ruling, the defendant appeals.

The check was executed and delivered under the following circumstances: Asbury, who lives in Boone County, Kentucky, went to Cincinnati on February 11, 1911, to purchase two horses. There he met his codefendant, S. Straus, and purchased the horses from him. Thereupon, he gave to S. Straus the check in question to pay for the horses, and Straus agreed to deliver the horses on the following Monday on the Kentucky side of Anderson Ferry at Constance, in Boone County, Kentucky. Asbury went to Constance on Monday and waited for the horses. The horses were not delivered then or at any time thereafter. While Asbury was waiting for the horses, Straus went to Petersburg, in Boone County, Kentucky, and presented the check to the Farmers Bank for payment. Payment was refused because of Straus' failure to be indentified. Straus then asked the cashier of the bank to certify the check. This was done. Returning to Cincinnati, Straus assigned and delivered the check to plaintiff, Taube. After Straus failed to deliver the horses on Monday, Asbury went to his place of business to find out what was the matter. Straus made some kind of explanation to the effect that one of the horses had become sick and could not be delivered. Asbury then demanded a return of the check. Straus refused, and replied that it had been put in the bank. Asbury returned home and

directed the bank not to honor the check. When the check was presented by one of the bank's correspondents, payment was refused. The check was then duly protested and this suit followed.

The check in question being regular on its face and payable on demand, and being negotiated within two days after it was drawn, plaintiff acquired title before it was overdue. The only question to be determined is: Did plaintiff take the check in good faith and for value and without notice of any infirmity in the instrument or defect in the title of his co-defendant, Straus. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such fact that his action in taking the instrument amounted to bad faith. Kentucky Statutes, section 3720b, subsection 56. The title of a person who negotiates an instrument is defective when he obtains the instrument, or any signature thereto, by fraud. Kentucky Statutes, section 3720b, subsection 55. When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired title as a holder in due course. This rule, however, does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title. Kentucky Statutes, section 3720b, subsection 59. The evidence in this case leaves no doubt that the check was obtained from Asbury by fraud. That being shown, it was incumbent upon plaintiff to show that he acquired title as a holder in due course.

Plaintiff, who was a horse dealer in Cincinnati, and conducts a sale stable at the stock yards and other sale stables, testifies that on Monday night, following the transaction which Straus had with defendant, Straus came to him annd asked him to cash a check. Straus informed plaintiff that a man had given him the check in payment for a horse. Plaintiff looked at the check and saw that it was certified and said: "I guess it is good. I will give you the cash for it." He then paid to Straus the amount of the check. At the time he did this plaintiff knew nothing about the transaction between Straus and defendant, and did not have the slightest information that there was anything wrong

with the check. He had nothing to do with the transaction which took place between Straus and defendant. He and Straus had never been associated together in business. The only business he had ever had with Straus was to sell him horses occasionally. On cross-examination, plaintiff admitted that he had a bookkeeper by the name of Hopkins who would sometimes fix up accounts for him. Did not remember whether Hopkins had ever fixed up his accounts with Straus or not. He never employed Straus to sell horses for him. He only sold to Straus. When he did, they would agree on the price before they went to Straus' stable.

Defendants proved by Joseph Sneider that the latter worked for plaintiff, who was operating a stable at the Union Stock Yards at Cincinnati, Ohio. Sneider had known plaintiff for about five years, and on several occasions had, at plaintiff's direction, taken horses to Straus' stable, plaintiff telling him that the horses had been sold. Sol Straus, a brother of defendant, Straus, testified that he knew plaintiff. Plaintiff had a stable at the stock yards and a stable at other places. Sidney Straus worked for plaintiff at the stable on Second street. Sidney Straus is the same person as the defendant, S. Straus. The way witness knew that Sidney Straus was working for plaintiff was that while witness was at the barn, Sidney Straus would come out there and pick out three or four horses and take them away and sell them. Sidney Straus worked for Taube for about eight months. W. M. Hopkins testified that three or four years ago he kept books for plaintiff. Since that time he had done odd jobs for plaintiff, fixing up accounts for him. Plaintiff would advance money for traders to buy stock with. When the stock was sold, the traders would return the money to plaintiff. Plaintiff, after deducting his commissions and expenses, would divide profits with the traders, and sometimes the traders would get all the profits. While witness was working for Mr. Taube, Mr. Taube advanced money to Sidney Straus to buy stuff for him. Witness never did any bookkeeping for Straus, but when he worked it was for Mr. Taube. Mr. Taube would call off to him the amount of stuff he had sold, what it cost, what he advanced on it, and the expense, from which items he would ascertain the profits that had been made. The profit was divided or "torn in two." Witness further stated that in adjusting the accounts between Taube

and Straus, he charged up to Straus' business the rent of the stable occupied by Straus.

Giving full effect to the evidence of the defendant, it fails to show that a partnership existed between plaintiff and Straus. It simply tends to prove that plaintiff and Straus had occasional transactions with reference to the sale of horses, and that these transactions were settled as they arose. It is not shown that plaintiff had the slightest connection with the transaction in question. There is a failure to show either that plaintiff, at the time he cashed the check, had knowledge of the fraud of Straus, or had knowledge of such facts that his action in taking the instrument amounted to bad faith. Plaintiff having shown that he paid cash for the check, and he had no notice of any infirmity in the instrument or defect in the title of Straus, and defendant having failed to prove any facts or circumstances tending to show the contrary, we conclude that the trial court properly directed a verdict in favor of plaintiff.

Judgment affirmed.