## EDWARD C. HILL, Appellant, v. T. J. DILLON and R. M. BUSHMAN, Respondents.

### Springfield Court of Appeals, December 11, 1913.

1. **PROMISSORY NOTES: Fraud in Obtaining: Burden of Proof: Bona-Fide Holder.** In a suit on a note by an indorsee, it being shown that the title of the payee was defective because the note was obtained by fraud, the burden rests on the plaintiff to prove that he acquired the title as a holder in due course. [Citing Secs. 10022, 10025 and 10029, R. S. 1909.]

2. ————: **Fraud Inducing Execution: Bona-Fide Holder: Province of Jury.** In a suit on a note by an indorsee, defendants introduced evidence tending to prove that the execution of the note was induced by fraud. Plaintiff introduced evidence, not disputed, tending to prove that he was a holder in due course. An issue of fact was created, the decision of which was wholly within the province of the jury.

3. **VERDICT: Against Weight of Evidence: Duty of Trial Court to Set Aside.** It is within the province of the trial court to correct any error on the part of the jury in determining a question against the weight of the evidence. And where the verdict is clearly against such weight of evidence, the trial court should set it aside.

4. **PROMISSORY NOTES: Action on: Defenses: Failure of Consideration.** Defendants, without exacting any warranty, bought stock in a mining corporation giving in payment their notes, knowing what property the corporation owned and what encumbrances were thereon. The property did not prove to be as valuable as defendants expected, the mining operations being unsuccessful and resulting in loss. *Held*, that such facts did not constitute a failure of consideration for the giving of the notes.

5. ————: **Failure of Consideration: Burden of Proof.** Mere want or failure of consideration, not coupled with a negotiation in breach of faith or under such circumstances as to constitute fraud, does not establish a defective title in an action on a note by an indorsee nor does it put in force the rule as to burden of proof declared in Sec. 10029, R. S. 1909.

6. ————: **Instructions: Not Based on Evidence: Erroneous.** The answer, in an action on a note by an indorsee, set up as a defense fraudulent representations on the part of the payee, not charging, however, that the plaintiff made any false representations. The evidence did not connect the plaintiff with

any fraudulent act in connection with the making of the note or the transaction on account of which the note was given. An instruction to find for the defendant if the plaintiff knew of the fraud before the assignment of the note to him, or if he acted in conjunction with the payee and others to induce the defendant to make the note, *held* erroneous as not being based upon the evidence.

7. **EVIDENCE: Purchase of Corporate Stock: Fraud in Similar Transactions: Not Relevant.** In an action on a note given in payment for stock in a corporation it was not proper to admit evidence of a third person to the effect that he had been induced to buy stock in the corporation by false representations of a party connected with the payee of the note in a similar transaction there being no showing of any knowledge on plaintiff's part of such fraud or that he had any connection therewith.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby,* Judge.

REVERSED AND REMANDED.

*Edgar P. Mann* and *William B. Skinner* for appellant.

(1) Representations which amount merely to an expression of opinion and which do not imply knowledge and about which men differ are not fraudulent, although not true and known to be so by the party making them and afford no relief against a contract. 1 Bigelow on Fraud, p. 473; Brown v. L. & Z. Co., 194 Mo. 681; Cornwall v. Real Estate Co., 150 Mo. 377; Wilson v. Jackson, 167 Mo. 156; Harrison v. Walden, 89 Mo. App. 164; Nauman v. Oberle, 90 Mo. 666; Cohn v. Reed, 18 Mo. App. 115; Gordon v. Butler, 105 U. S. 553. (2) False representations of an employee or agent, as an inducement to contract cannot be relied upon as a defense thereto, unless the representations were within the scope of the employee or agent's authority and were made with the sanction of the principal, and agency must appear, before principal is bound. Rawling v. Bean, 80 Mo. 614; Crawford v.

176 Mo. App. 13

Bank, 67 Mo. App. 39; Richardson v. Palmer, 36 Mo. App. 522; Ins. Co. v. Kuhlman, 6 Mo. App. 522. (3) Instructions not predicated on the evidence are erroneous. McCartney v. Fagain, 42 Mo. App. 619; McKeon v. Railroad, 42 Mo. 79; Campbell v. VanHouten, 44 Mo. App. 231; McAtee v. Vanlandingham, 75 Mo. App. 53. (4) The mere possession of a negotiable instrument indorsed in blank, imports prima facie that the holder acquired it bona fide, for value, in the usual course of business, before maturity and without any notice of any circumstances impeaching its validity. Daniel on Negotiable Instruments, par. 812; Johnson v. Murray, 72 Mo. 282; Keim v. Vette, 167 Mo. 399; R. S. 1909, sec. 10029. (5) If on the trial there is in the opinion of the court nothing to contradict the evidence offered to support a party's cause, such party is entitled to a peremptory instruction. Bank v. Hainlin, 67 Mo. App. 483; Wright v. Realty Co., 178 Mo. 80. (6) Fraud is an affirmative fact to be proved, and while it may be inferred from circumstance yet it can only be legitimately inferred from substantial and tangible facts in evidence, suspicion and conjecture is not enough to warrant a court in submitting the issue of fraud to a jury. Ridge v. Greenwell, 53 Mo. App. 479; Thrasher v. Greene County, 105 Mo. 244; Distilling Co. v. Lock, 59 Mo. App. 637.

*J. B. McGuffin, George Pepperdine* and *H. H. Bloss* for respondents.

(1) Representations of value to persons who are inexperienced and not in a situation to judge of the value, made by persons who are in a situation due to experience, to judge of the value of the property sold, where the buyer relies on such expressions of value and has not the means at hand to inform himself, constitute actionable fraud. Alston v. Loy, 172 Fed. 90; Cahn v. Read, 18 Mo. App. 130; Mining Co. v. Wat-

rus, 61 Fed. 162; Lumber Co. v. Dent, 121 Mo. App. 108; Morley v. Hurrah, 167 Mo. 74; Tinker v. Kier, 195 Mo. 183, 94 S. W. 501; Hess v. Draffen & Co., 99 Mo. App. 580, 74 S. W. 440; Gottschalk v. Hirchner, 109 Mo. 184, 17 S. W. 905; Dun v. White, 63 Mo. 181; Cottrill v. Krum, 100 Mo. 405, 13 S. W. 753. (2) When persons interested either as confederates or as conspirators act jointly, the acts and declarations of each, said and done, in the accomplishment of the general purpose, are to be taken in account against the others. Shinebarger v. Shelton, 41 Mo. App. 147; Poe v. Stockton, 39 Mo. App. 550; Mosby v. McKee, Zook & Whitehead, 91 Mo. App. 500. (3) After the maker shows either fraud or failure of consideration in the execution of the note, it then devolves on the assignee of the note before maturity to show affirmatively that he procured said note for value, before maturity, without notice of either of such defenses. Hill v. Dillon, 151 Mo. App. 86; Jones v. Wilson, 140 Mo. App. 281; Stewart & Co. v. Andes, 110 Mo. App. 243; Jones v. Bank, 128 S. W. 829. (4) And after the assignee makes such proof the sufficiency thereof is on one of fact for the jury, as held in this case on the former appeal. (5) Where fraudulent intent is the gist of the inquiry, that the evidence should be allowed to take a wide range and the other transactions of the party accused of the fraudulent intent, not only contemporaneous with the transaction in controversy, but previous and subsequent to it, which have a natural tendency to explain the motives with which it may have been affected and which are not too remote and conjectural, should be gone into. Manheimer v. Harrington, 20 Mo. App. 301; McBeth v. Craddock, 28 Mo. App. 380.

A. E. SPENCER, Special Judge.—This is the second appeal of this case. The opinion on the former appeal is reported in 151 Mo. App. 86, 131 S. W. 728. The

action is on a negotiable promissory note, and brought by an endorsee against the makers. The petition is in the usual form. The answer consists, first, of a general denial; second, of an admission of the execution of the note and of the endorsement, with a specific denial that the plaintiff is a purchaser for value before maturity, it being alleged that the assignment of the note to plaintiff was without consideration and to enable the payee to recover the amount of the note and prevent defendants from setting up the defenses later mentioned; that the note is held in secret trust by plaintiff for the payee, who is charged to be the real party in interest. The charge that the assignment was colorable, and that plaintiff holds the note in secret trust for the payee, is not supported by any evidence. Third, it is alleged that the execution of the note was procured by certain fraudulent representations and acts by the payee, Hart, and others who are not named. These representations and acts are set out in detail. They are discussed in the former opinion and need not be repeated here. Fourth, the answer charges that the consideration of the note was certain mining stock in a corporation; that the value of the stock was dependent on the value of a mining lease belonging to the corporation and alleged to be its sole and only asset, and that the payee in the note, to induce the purchase of the stock by defendants, falsely and fraudulently represented that the stock was dividend paying stock and extremely valuable, when, in fact, the stock had no value at all and had never paid a cent of dividend, and the consideration for the giving of the note had utterly failed.

For reply, plaintiff alleges that he is the holder of the note in due course, stating the facts essential to this relation. The reply then states facts on which it is sought to base a plea of estoppel as against defendants as to the defenses set up in their answer. It was held in the former opinion that the matters

pleaded and shown in evidence do not estop defendants from setting up fraud in the procurement of the note as a defense against payment. This ruling was correct, and it is not necessary to reiterate here the reasons therefor.

The opinion on the former appeal gives somewhat in detail the facts tending to sustain the answer that the execution of the note was procured by fraudulent representations and acts. Reference is made to that opinion for these facts. The evidence on this question was substantially the same at each trial. It was held on the former appeal that the evidence on this question was sufficient to entitle defendants to go to the jury on the question of the note having been procured by fraud. In this opinion we concur.

Appellant contends for the application in this case of the rule that the possession of a negotiable instrument endorsed in blank imports prima facie that the holder acquired it bona fide, for value, in the usual course of business, before maturity and without notice of any circumstances impeaching its validity; also, that plaintiff's evidence tended to prove this situation, and that as there was no evidence to the contrary, plaintiff was entitled to a peremptory instruction directing a verdict in his favor. In this connection, it is urged that the court erred in refusing instruction No. 4, asked by plaintiff, which is as follows:

"The court instructs the jury that the instrument sued on in this case is a negotiable promissory note and the defendants admit in their answer that they executed the same and that it has been assigned to the plaintiff, and, in law, it is presumed that such note was negotiated with plaintiff before maturity, for value, and without notice of any defense thereto."

The cases cited by appellant on this point arose before the enactment of our Negotiable Instruments Law, while this question must be determined by the provisions of that law. Section 10022, Revised Stat-

utes of Missouri, 1909, defines a holder in due course
as follows:

"A holder in due course is a holder who has taken
the instrument under the following conditions: (1)
That it is complete and regular upon its face; (2) that
he became the holder of it before it was overdue, and
without notice that it had been previously dishonored,
if such was the fact; (3) that he took it in good faith
and for value; (4) that at the time it was negotiated
to him he had no notice of any infirmity in the instru-
ment or defect in the title of the person negotiating
it."

Section 10025 provides when the title of a person
who negotiates an instrument is defective, and is as
follows:

"The title of a person who negotiates an instru-
ment is defective within the meaning of this chapter
when he obtained the instrument, or any signature
thereto, by fraud, duress or force and fear, or other
unlawful means, or for an illegal consideration, or
when he negotiates it in breach of faith, or under such
circumstances as amount to a fraud."

Section 10029, locates the burden of proof when
defective title is shown, and is as follows:

"Every holder is deemed prima facie to be a
holder in due course; but when it is shown that the title
of any person who has negotiated the instrument was
defective, the burden is on the holder to prove that he
or some person under whom he claims acquired the
title as holder in due course. But the last mentioned
rule does not apply in favor of a party who became
bound on the instrument prior to the acquisition of
such defective title."

Under the plain provisions of these sections, when
it was shown that the title of the payee was defective
because the instrument was obtained by fraud, then
the burden rested on the plaintiff to prove that he ac-
quired the title as holder in due course. This has been

previously ruled in this State. [Jobes v. Wilson, 140 Mo. App. 281, 292, 124 S. W. 221; Bank v. Hanks, 142 Mo. App. 110, 125 S. W. 221; Johnson Co. Savings Bank v. Mills, 143 Mo. App. 265, 127 S. W. 425; Bank v. Dowler, 163 Mo. App. 65, 145 S. W. 843; Link v. Jackson, 164 Mo. App. 195, 147 S. W. 1114.]

Possibly the opinion in Reeves v. Letts, 143 Mo. App. 196, 128 S. W. 246, is to the contrary, but in this case the provisions of the Negotiable Instruments Law were not presented to or mentioned by the court. If this case is in conflict with the cases above cited, It must be held as overruled by Southwest National Bank v. House, 157 S. W. 809, decided by the same court, which declares the rule in harmony with the cases above cited. The same construction of these sections has been given by the courts of various other States having a similar statute relating to negotiable instruments. [Southerland v. Mead, 80 N. Y. S. 504; Bank v. Foley, 103 N. Y. S. 553; Packard v. Figiuolo, 114 N. Y. S. 753; Kennedy v. Spieka, 129 N. Y. S. 390; Keene v. Behan, 40 Wash. 505, 82 Pac. 884; Singer Mfg. Co. v. Summers, 55 S. E. (N. C.) 522; Am. Natl. Bank v. Fountain, 148 N. C. 590, 62 S. E. 738; Cook v. Co., 28 R. I. 41, 65 Atl. 641; Louis DeJonge & Co. v. Woodpost & Co., 72 Atl. (N. J.) 439; Parsons v. Co., 80 Conn. 58, 66 Atl. 1024; Stouffer v. Alford, 78 Atl. (Md.) 387; Wilson v. Kelso, 80 Atl. (Md.) 895; Second Natl. Bank v. Hoffman, 229 Pa. 429, 78 Atl. 1002; McKnight v. Parsons, 113 N. W. (Iowa), 858, 136 Ia. 390; Iowa Natl. Bank v. Carter, 123 N. W. (Iowa) 237; Arnd v. Aylesworth, 123 N. W. (Iowa) 1000; Cox v. Cline, 117 N. W. (Iowa) 48; Warren v. Smith, 100 Pac. (Utah) 1069; Leavitt v. Thurston, 113 Pac. (Utah) 77; Cedar Rapids Natl. Bank v. Myhre, 57 Wash. 596, 107 Pac. 518; Wells v. Duffy, 69 Wash. 310, 124 Pac. 907, 19 Idaho, 18; Winter v. Nobs, 112 Pac. 525; Shellenberger v. Nourse, 20 Idaho, 323, 118 Pac. 508; Hodge v. Smith, 130 Wis. 326, 110 N. W. 192;

Asbury v. Taube, 151 Ky. 142, 151 S. W. 372; Campbell v. Bank, 137 Ky. 555, 126 S. W. 114; In re Hill, 187 Fed. 214.]

The situation then is that the defendants introduced evidence tending to prove that the execution of the note was induced by fraud, and the plaintiff offered evidence, not contradicted, tending to prove that he was a holder in due course. The burden rested on plaintiff to show this under the statute. This created an issue of fact which was exclusively for the jury, notwithstanding the fact that the only evidence on this question was that introduced by plaintiff, and that all of this evidence tended to prove that he was a holder in due course. The decision of this question was solely the province of the jury, and the court, under the decisions in this State, could not invade that field and peremptorily direct a verdict for plaintiff. [Gannon v. Gas Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907; Link v. Jackson, 158 Mo. App. 63, 92, 139 S. W. 588; Dalton v. City, 173 Mo. 39, 72 S. W. 1068; First State Bank v. Hammond, 124 Mo. App. 177, 101 S. W. 677; McCrosky v. Murray, 142 Mo. App. 133, 125 S. W. 226; Hugumin v. Hinds, 97 Mo. App. 346, 71 S. W. 479; Kingsbury v. Joseph, 94 Mo. App. 298; Dodd v. Guiseffi, 100 Mo. App. 311; Hunter v. Wethington, 205 Mo. 284, 293; Johnson v. Grayson, 230 Mo. 380, 394, 130 S. W. 673.]

The case of Wright Investment Co. v. Friscoe Realty Co., 178 Mo. 72-80, 77 S. W. 296, cited by appellant, is not to the contrary. Suit was on a note and the case arose before the enactment of the Negotiable Instruments Law. Under the rule declared in Johnson v. McMurry, 72 Mo. at 282, also cited by appellant, where plaintiff made general proof that he received the paper before due, bona fide and for value, it devolved on the maker to show that the holder had actual notice of the defense urged. This the defendant in the Wright case had failed to do. But the stat-

ute has changed this rule. It follows that this point must be determined against the appellant. We deem it proper to state here, however, that any error on the part of the jury in determining a question against the weight of the evidence is within the power of the trial court to correct and where the verdict is clearly against the weight of the evidence, the trial court should promptly and fearlessly exercise the power given it by the statutes ant set the verdict aside.

It is somewhat difficult to construe the fourth paragraph of the answer, as it seems to blend the allegations of fraud on the part of the payee in falsely representing that the stock was dividend paying stock and extremely valuable, when, in fact, it had never paid a dividend and had no value, with the plea that the consideration for the note had utterly failed. But for the instructions given by the court on behalf of defendants as hereinafter mentioned, a careful consideration of this portion of the answer might not be necessary, but these instructions make this question of considerable importance. We do not find in the record any evidence tending to prove the allegation that the payee represented that said stock was dividend paying stock or had ever paid any dividend, or that the mine had ever paid any profit, so the charge of fraud in this respect entirely failed of proof. This leaves for determination the plea that the consideration for the note utterly failed.

This question of failure of consideration is to be considered entirely apart from any fraudulent representations, and also from any warranty. It is not pretended that the purchasers who are the makers of the note exacted or received any warranty in connection with the deal. The evidence shows that defendants bought stock in a corporation, which corporation owned title in fee to ten acres of land, together with a mining lease on a much larger tract, and also owned a mining plant, all of said property being subject to

the encumbrance of a deed of trust. The defendants knew just what property the mining corporation owned and knew of the encumbrance by way of deed of trust. They contracted to buy and did in fact acquire certain shares of stock in this corporation. The corporation had the title to the property owned by it in precisely the condition that defendants understood. The question then is whether the fact that the properties owned by the corporation did not prove to be of the value the defendants expected, and that the company operations were unprofitable and resulted in the loss of considerable money by defendants and others, is in law a failure of consideration in the sense that same is now being discussed. We think this question should be answered in the negative.

In 9 Cyc. 369, the rule is stated as follows: "On a sale of personal property, it is generally held that in the absence of fraud or warranty, it is no ground for defeating the action for the price that the article proves so defective in quality as to be worthless." [Sutro v. Rhodes, 92 Calif. 117.] Otis v. Cullum, 92 U. S. 447, 23 L. Ed. 496, was a case of the sale of bonds subsequently held to be void because the Legislature had no power to pass the acts authorizing same. Note was given for the purchase price and suit brought thereon. The defense asserted was failure of consideration. The opinion first points out that the questions of fraud and warranty are to be laid out of view, and then uses the following language pertinent to the present case: "Here also, the plaintiffs in error got exactly what they intended to buy, and did buy. They took no guaranty. They are seeking to recover, as it were, upon one, while none exists. They are not clothed with the rights which such a stipulation would have given them. Not having taken it, they cannot have the benefit of it. The bank cannot be charged with a liability which it did not assume." To the same effect is Hunting v. Downer, 151 Mass. 275, 23

N. E. 832, where the court states the rule as follows: "The mere purchase of worthless stock, and known by the seller to be so, will not exonerate the buyer from paying the price agreed on therefor, where he has obtained that for which he contracted, and where no fraud was practiced on him. [Dean v. Carruth, 108 Mass. 242, 245; Lambert v. Heath, 15 Mees. & W. 487; Lawes v. Purser, 61 El. & Bl. 930; Bryant v. Pember, 45 Vt. 487.] Where that which is assumed to be bargained and sold has no existence, a different principle applies; and for this reason it has been held that the sale of a void patent, or of a license thereunder, would not be consideration for a contract. [Harlow v. Putnam, 124 Mass. 552, 555.]"

This statement is not in any wise in conflict with the rule stated in Brown v. Welden, 99 Mo. 564, and 27 Mo. App. 251; Compton v. Parsons, 76 Mo. 455, Danforth v. Crookshanks, 68 Mo. App. 311, or Murphy v. Gay, 37 Mo. 535. In these cases, there appears either fraud or breach of an express or implied warranty. Most of them are where an article was sold or purchased for a particular purpose known to both parties. In such cases, there is an implied warranty of fitness for the purpose intended. [St. Louis Brewing Co. v. McEnroe, 80 Mo. App. 429; Aultman v. Hunter, 82 Mo. App. 632; Moore v. Koger, 113 Mo. App. 423.] In 9 Cyc. 371, the rule is stated that if there is consideration, the fact that it subsequently diminishes in value or becomes of no value at all cannot relieve the promisor from liability on his promise. "Where a party gets all the consideration he voluntarily and intentionally contracts for, he will not be allowed to say that he got no consideration. [Baker v. Roberts, 14 Ind. 552.]" [Smock v. Pierson, 68 Ind. 405, 34 Am. Rep. 269; Bean v. Proseus (Calif.), 31 Pac. 49; Rice v. Grange, 131 N. Y. 149, 30 N. E. 46.]

In an action upon a promissory note given as the price of real or personal property, it is no defense

that the value of the property conveyed was inadequate to the amount of the note. [6 Am. & Eng. Ency. of Law (2 Ed.), 695.]

In Worth v. Case, 42 N. Y. 362, 369, the court states the rule: "If one voluntarily and fairly purchases either real or personal property of another, at a fixed price, and executes his note for the payment of the purchase money, he will not be allowed when sued thereon, to prove, for the purpose of defeating, or reducing the amount of the recovery on the note, that the property in fact was not worth one-half, or one-quarter, or even one-tenth of the amount at which he purchased it." And again in Earl v. Peck, 64 N. Y. 596: "Mere inadequacy of consideration, except as a circumstance bearing upon the question of fraud, or undue influence, is not a defense to a note. It is not necessary that the consideration of a note shall be equal in pecuniary value to the obligation incurred. . . . A note for a thousand dollars given for a horse confessedly worth but one hundred, cannot be successfully defended in whole or in part, on the ground of a want or failure of consideration."

"The value of most considerations, as well as of most promises, is a thing which the law cannot measure; it is not merely a matter of fact, but a matter of opinion. If, therefore, the promisor thinks the consideration is equal to the promise in value (i. e., if he is willing to give the promise for the sake of getting the consideration), the consideration will be equal to the promise in value for all the purposes of the contract. From this it is but an easy step to the conclusion that whatever a promisor chooses to accept as the consideration of his promise, the law will regard as equal to the promise in value, provided the law can see it has any value." [Langdell's Summary of the Law of Contracts, 55.]

That there was an actual consideration in the present case is beyond question, and that the defendants,

eliminating questions of fraudulent representations, got all they contracted for, is equally certain. In 6 Am. & Eng. Ency. of Law (2 Ed.), 780, it is stated, "that the rule is almost elementary that when the promisor gets all he contracts for he cannot be heard to complain that the consideration was not valuable." In 1 Benjamin on Sales (6 Ed.), p. 542, sec. 620, the rule is stated as follows: "But there is not a failure of consideration when the buyer has that which he really intended to buy, although the thing bought shall turn out worthless." [See, also, 2 Randolph on Commercial Paper, p. 138, sec. 543; Welsh v. Carter, 1 Wend. 185, 9 N. Y. C. L. (L. Ed.) 881.] Under these authorities, we are of the opinion that there was not in this case any issue of failure of consideration to be submitted to the jury, independent of fraudulent representation.

The Negotiable Instrument Act, in the sections cited above, fixes the burden of proof where defective title is shown, and defines a defective title as being where one obtains the instrument or any signature thereto by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud. While in view of the fact that the present judgment must be reversed and the case remanded for a new trial, it is perhaps not necessary to decide the question, it is at least doubtful, whether failure of consideration and particularly, a partial failure, taken alone, constitutes a defective title within the meaning of this act. Section 9999 provides that absence or failure of consideration is a matter of defense as against a person not a holder in due course; and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount, or otherwise. The importance of this is that if such failure or partial failure of consideration be held to constitute a defective title, then

under section 10029, upon showing of such failure or partial failure of consideration, the burden rests on the holder to prove that he is the holder in due course; while if such failure or partial failure of consideration does not constitute a defective title, the common law rule would prevail and the burden of proof be different. [Johnson v. McMurry, 72 Mo. 278; Bank v. Crow, 60 N. Y. 85.]

In Cole Banking Co. v. Sinclair, 34 Utah, 454, 98 Pac. 411, this question was considered and it was held that a partial failure of consideration as between the parties to a negotiable note was not a defect in title so as to require an endorsee suing thereon to show himself a holder in due course; the burden of showing want of consideration and notice thereof by the endorsee being upon the maker. This was under a Negotiable Instruments Law similar to the Missouri law. The court states the law as follows: "The defense pleaded was not illegal, but mere partial failure of consideration. Failure or want of consideration does not constitute a defective title within the meaning of the foregoing provisions. [1 Daniels, Neg. Inst., secs. 814, 817.] In the treatise of Eaton & Gilbert on Commercial Paper and the Negotiable Instruments Law, at section 79, in discussing the statutory provision corresponding to section 1611 of our statute, it is said by the authors: 'In the absence of proof of fraud or misappropriation, the presumption is that the indorsee of a negotiable bill or note is a bona-fide holder for value, and this presumption is not repelled merely by proof that the bill or note, as between the immediate parties, was without consideration, and was made, indorsed, or accepted by one for the sole accommodation of the other. When no other proof is given, the holder is not bound to prove a valuable consideration. . . . It will be noticed that the statute provides that proof of a defective title shifts the burden of proof upon the holder. A title is defective where

the instrument is obtained for an illegal consideration. It follows, therefore, that if the consideration be shown to be illegal, as for a gambling debt, an unlawful sale of commodities, or as being tainted with usury, the burden of proof will then rest upon the plaintiff to show that he was a holder in due course; but proof of a want or failure of consideration does not in most jurisdictions operate to shift the burden of proof to the plaintiff.' Cases are cited by the authors to the effect that the indorsee, in an action by him against the maker, cannot be called on to prove consideration until the defendant has shown that the note was obtained or put in circulation by fraud or undue means, and that proof of want or failure of consideration between a maker and a payee of a promissory note does not change the presumption that one to whom the latter has indorsed and delivered the note is a bona-fide holder for value, but the burden of proof is upon the maker.''

To the same effect is Ogden Negotiable Instruments Law, section 319, p. 251, viz.: ''Where it is a question of a personal defense, there are two classes of cases: 1. Where the defense shows lack of consideration, or release, or payment of a bill or note. 2. Where the defense shows fraud, duress, or illegality in the inception of the instrument. In the first class it is not so much the question of wrongdoing as merely a question of lack or failure of consideration, the first thing to be proved by the defendant is that the plaintiff had notice of the fact that there was a want of consideration or failure of consideration. He does not prove that there was a failure of consideration, but notice and after that he proves the facts of want or failure of consideration. In the other cases, that is, those of fraud or illegality, the defendant does not prove notice but proves the fraud or illegality itself. And when the fraud or illegality is proved the presumption of notice arises without any proof of notice

and the burden of proof is on the plaintiff to prove he did not have notice.''

This is not at all in conflict with the point really decided in Jobes v. Wilson, decided by this court and reported in 140 Mo. App. 281, 124 S. W. 548. In that case it is apparent that the act of plaintiff's agent, who took the notes with the distinct agreement that certain credits were to be endorsed thereon, but who failed to have these credits endorsed, and negotiated the notes without such credits, was at least a breach of faith and the negotiation under such circumstances amounted to a fraud. This, as we understand it, is all that is decided in the Jobes case. In fact, the Court uses this language: ''If the statements of defendants as to what was to be done with the notes, are to be believed, then it was an act of bad faith, amounting to a fraud, on these defendants, as the term is defined in section 55, to negotiate these notes without placing the credits upon them.''

Similar transactions have been held to amount to a breach of faith or a fraud in the following cases: Southerland v. Meade, 80 N. Y. S. 504; Kennedy v. Spieka, 129 N. Y. S. 390; DeJonge & Co. v. Woodpost (N. J.), 72 Atl. 439; Hodge v. Smith, 130 Wis. 326, 110 N. W. 192; McKnight v. Parsons, 136 Ia. 390, 113 N. W. 858. In our opinion, the decision in the Jobes case, supra, is correct. We believe that the court in that opinion went too far by way of argument in stating the general rule as to burden of proof in cases of failure of consideration, total or partial.

The two cases cited by the court, Hodge v. Smith, 130 Wis. 326, 110 N. W. 192, and McKnight v. Parsons, 136 Ia. 390, 113 N. W. 858, 22 L. R. A. (N. S.) 718, were cases not only of failure of consideration, but, more than that, were cases where the notes had been negotiated in breach of faith and under such circumstances as to amount to fraud, thus making a defective title within the statutory definition thereof.

What we mean to hold is that the mere want or failure of consideration, not coupled with a negotiation in breach of faith or under such circumstances as to amount to a fraud, does not constitute a defective title under the statute and therefore does not put in force the rule as to burden of proof declared in section 10029, supra. If this section applies to and fixes the burden of proof in all cases of defense good as against one not a holder in due course, but precluded as against a holder in due course, then the first clause of this section, providing that "every holder is deemed prima facie to be a holder in due course," becomes an idle jumble of words. It would then mean that every holder is prima facie so deemed unless some defense is shown, and then he must prove himself a holder in due course. Unless a defense is shown, the question whether plaintiff is or is not a holder in due course is of no importance, and therefore this clause of the above section would have no legal effect. But if the construction we have given above be applied to this section, every part of it has a real meaning and effect. The holder is deemed prima facie one in due course, and this continues and applies in all cases but the one exception made by the statute of a defective title as defined in section 10025. The Negotiable Instruments Law, as adopted in this State, was not a new or hastily drawn statute. It had already been enacted by a number of States, and had been carefully considered and fully criticized by the bar generally. The subject of want and failure of consideration was in the minds of the authors and was treated in section 9999. It cannot be doubted that when section 10025 was drawn defining a defective title, these questions pertaining to consideration were duly considered. If it had been the intention to make title defective where there was total or partial want or failure of consideration, this would have been stated with the same

clearness of expression that appears throughout the act. The framers of the law knew the various decisions as to the burden of proof and the different rules where defense was fraud or illegality, and where it was such want or failure of consideration. So when it is provided in section 10029 that where defective title is shown the burden is on the holder to show that he or some one under whom he claims acquired title as holder in due course, it seems certain that there was meant only a defective title as defined in the act, and that the statutory rule of burden of proof applies in no other instances. This court has followed the dictum of Jobes v. Wilson, supra, in several cases. In Bank v. Hanks, 142 Mo. App. 110, 125 S. W. 221, it again included want of consideration with fraud as being within the meaning of section 10029, supra. However, in this case the defense was fraud and the instruction under discussion when this expression was used was based on fraud alone. Hence, this coupling of want of consideration with fraud in stating the rule was unnecessary to the decision of the point involved. But in Johnson Co. Savings Bank v. Mills, 143 Mo. App. 265, 127 S. W. 425, and Birchtree State Bank v. Dowler, 163 Mo. App. 65, 145 S. W. 843, it was decided that where failure of consideration is shown, the burden is cast upon the holder under section 10029, supra. To this extent, we are of the opinion, these decisions are erroneous for the reasons above stated, and we shall therefore decline to follow them.

At the request of the defendants, the court gave the following instructions: (e) ''The court instructs the jury that if you believe from the evidence in this case, that one Grant Hart, the payee in the note sued on, in conjunction with other persons who were interested in the sale of stock in the Golden Jack Mining Company, for the purpose of securing the execution of the note sued on, falsely and fraudulently represented to the defendants herein the condition of the face of

ore in the south drift of the Golden Jack Mine, located about a mile south of Stotts City, Mo., and fraudulently so arranged the stope in the drift in said mine so that the defendants were unable to ascertain for themselves the true extent of ore in the place there or its true ore bearing qualities, and that defendants were thereby deceived and induced to execute the note sued on, and if you further believe from the evidence after so concealing and misrepresenting the said drift in said mine, if any, said Grant Hart and others interested in the sale of said stock, falsely represented to the defendants the prospective income from said mine which could be obtained as a result of working on such face of ore, and, that by reason of said misrepresentations the defendants were induced to sign the said note, believing them to be true, then the said note is void in the hands of the said Grant Hart; and if you further believe from the evidence that the plaintiff herein, before the assignment of the said note to him, knew of said fraud practiced on defendants, or if you believe from the evidence that the plaintiff acted in conjunction with the said Hart and others in inducing the defendants to execute the note sued on and assisted in making said deal, then he would not be entitled to recover in this case and your verdict should be for the defendants." (f) "The court instructs the jury that if you believe from the evidence in this case that the consideration for the execution of the note sued on was certain mining stock in the Golden Jack Mining Company, and that at the time of said sale and now said stock was utterly worthless and of no value, and if you further believe from the evidence that the plaintiff herein, prior to the assignment of the note to him, knew that said note was given for such worthless stock, or if you believe from the evidence that the plaintiff assisted one Grant Hart and others in consummating the transactions that induced the defendants to execute the note sued on, then

your verdict should be for the defendants." (h) "The court instructs the jury that if you believe from the evidence that the note sued on was obtained from the defendants by means of fraud practiced on the makers by Grant Hart and others as defined in other instructions, or that said note was given for worthless stock in the Golden Jack Mining Company, then it devolved upon the plaintiff to prove by the greater weight or preponderance of the evidence that he procured said note before maturity for value, and in good faith, and unless you so believe from the evidence your verdict should be for the defendants, or if you believe from the evidence that plaintiff assisted in consummating said deal as defined in other instructions, then your verdict should be for the defendants."

By Instruction "e" it is declared that in case the jury find for the defendants on the question of fraudulent representation, then if they believe from the evidence that the plaintiff, before the assignment of the note to him, knew of the fraud practiced on defendants, *or* if they believe from the evidence that the plaintiff acted in conjunction with the said Hart (payee) and others in inducing the defendants to execute the notes sued on and assigned in making the deal, the verdict should be for the defendants. This instruction should not have been given. The answer charges fraudulent representation by the payee Hart "in conjunction with other parties" not named, and does not charge that the plaintiff made any of these representations. It is at least doubtful whether such pleading is sufficient to authorize this instruction. A careful reading of the record warrants the statement that there is no evidence tending to prove that the plaintiff acted in conjunction with the said payee or anyone else in inducing the defendants to execute the note sued on, or in anywise assisted in making said deal in such a manner as to make plaintiff a party to the fraud or connect him therewith. For this reason,

the instruction is erroneous as not being based upon the evidence.

Instruction "f" is erroneous, first, because under the rules heretofore stated upon the question of failure of consideration the instruction does not properly declare the law on that question; and, second, because as in instruction "e," there is no evidence to warrant the latter part of the instruction authorizing a verdict for the defendants if the jury believe that plaintiff assisted the payee and others in consummating the transaction that induced the defendants to execute the note.

We have not quoted instruction "g," but under the present ruling it is incorrect to the extent that it declares on the question of failure of consideration.

Instruction "h" tells the jury that if the note was obtained by means of fraud, the burden is on plaintiff to prove that he procured the note before maturity for value and in good faith. It is erroneous in that it also tells the jury that if it is found that the note was given for worthless stock in the mining company, the same burden of proof devolves upon the plaintiff. As already stated, there is no question of failure of consideration in this case separate and apart from the question of fraud, and the mere fact that the stock may have been worthless from the standpoint of value does not constitute a defense, and the question whether or not the stock was worthless should not have been submitted to the jury as an issue for determination by them, nor should that body have been told that the fact that the stock was worthless in itself cast upon the plaintiff the burden of proof stated. The instruction is also erroneous in that it tells the jury that if they believe that plaintiff assisted in consummating said deal, the verdict should be for. the defendants. This, for the reason that there is no evidence in the case that plaintiff did so assist, and further, because the instruction submits to the jury the question of as-

sistance by plaintiff in consummating the deal without regard to the character of that assistance, or the situation or knowledge of the plaintiff in rendering same. It might very well be that one could assist in some degree and in some manner in consummating a deal by which some of the parties perpetrated a fraud, and yet be entirely ignorant of the fraud and not negligent in being so ignorant. Plaintiff's participation in the fraud, if any was shown by the evidence, must have been a guilty participation in some degree before the instruction would be warranted.

The court, over the objection of appellant, permitted the witness Wakefield to testify that he bought some stock in the company through the influence of Messrs. Loy and Hutler, and also on an engineer's report he had; that Loy represented to him that it was a paying mine, etc. The evidence connects Loy with Hart, the payee of the note, in the transaction with defendants, but Wakefield's purchase of stock was entirely separate and apart from the purchase by defendants, being a different transaction at a different time, and this evidence should not have been admitted. It is not shown that these representations were intended to be or were in fact communicated to the defendants.

For the errors above noted, the judgment in this case must be reversed and the cause remanded for a new trial, and it is so ordered. *Sturgis, J.,* and *Robertson, P. J.,* concur. *Farrington, J.,* not sitting.