CASE 67.—ACTION BY THE FOURTH NATIONAL BANK OF CINCINNATI, OHIO, AGAINST A. W. CAMPBELL.— March 9, 1910.

## Campbell v. Fourth Nat. Bank of Cincinnati

Appeal from Pike Circuit Court.

A. J. KIRK, Circuit Judge.

Judgment for plaintiff, defendant appeals.— Affirmed.

1. Bills and Notes—Bona Fide Purchaser for Value—"Holder in Due Course" — "Value" — "Holder for Value." — Negotiable Instrument Act, section 52, Ky. St. 3720b, defines a "holder in due course" as one who has taken the instrument complete and regular upon its face, before it is overdue, and without notice of previous dishonor, in good faith and for value, and without notice of any infirmity or defect in the title of the person negotiating it. Sections 25, 26, and 27 define "value" as any consideration sufficient to support a simple contract, including an antecedent or pre-existing debt, and declares that, where value has been given for the instrument, the holder is deemed a "holder for value" in respect to all parties who became such before that time,

or where he has a lien on the instrument, arising either from contract or implication of law, he is a holder for value to the extent of his lien. Held that, where a bank took a note as collateral security for a note it then held, it was a holder for value, as also it was if it took the note in exchange for the note of the indorser.

2. Appeal and Error—Rulings on Evidence—Burden of Proof— Prejudice.—Defendant in an action on a note was not prejudiced by an alleged erroneous ruling as to the burden of proof on the issue of holder for value, where plaintiff was entitled to a peremptory instruction under any view of the evidence on such issue.

3. Bills and Notes—Burden of Proof.—Where plaintiff seeks a recovery on a note on the ground that he is a bona fide purchaser for value without notice, he must allege and prove (if denied) the facts establishing such right, nor is such rule changed by the Negotiable Instrument Act, section 59, Ky. St. section 3720b, providing that every holder is deemed prima facie a holder in due course, but, when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course.

4. Bills and Notes—Negotiable Instrument Act.—The negotiable instrument act is, in the main, a mere codification of the common-law rules, constituting the law merchant, so that, where its language is consistent with the rule previously recognized, it should be construed as simply declaratory of the prior law.

EARNST, CASSATT and BUTLER & MOORE for appellant.

YORK & JOHNSON and C. B. WEILY for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

A. W. Campbell executed to the Boice & Grogan Lumber Company three notes aggregating $2,601.90. The payees of the notes indorsed them in bank to the Fourth National Bank of Cincinnati, Ohio, and, the notes not being paid at maturity, the bank brought this suit against Campbell on them. He defended on

the ground that the notes were obtained from him by fraud. At the conclusion of the evidence on the trial of the case, the court instructed the jury peremptorily to find for the plaintiff, and, a judgment having been entered against Campbell, he appeals.

The evidence introduced on the trial to show that the notes were obtained from Campbell by fraud was sufficient to take the case to the jury, unless the bank was a bona fide purchaser for value and without notice of the fraud. There was no evidence tending to show notice to the bank of the fraud, and so the question was narrowed to this: Was the bank a holder for value? The only evidence on the subject was given by H. P. Cook, the vice president of the bank, who testified on the trial, in substance, to these facts: The bank had dealings with the Cypress Lumber Company, and had discounted for it a note made by Woodward and Grogan for $2,822.34, on April 10, 1907. The note was due Aug. 3, 1907. Woodward came to the bank asking more time on the debt, which the bank agreed to give if he had some good paper. He then produced the three Campbell notes. The bank discounted the notes $54.42, leaving the net value of the notes on that date $2,547.48, which was credited on the note of Woodward and Grogan, leaving due on that note $274.88. The bank paid no money to the Boice & Grogan Lumber Company. It simply gave them a credit on the note it held for $2,822.34, and a few days afterwards Woodward came in and paid the bank the balance, $274.88. The bank still continued to hold that note, as Cook testified on the trial, under the following circumstances: "After Mr. Woodward had paid this $274.88, which was the balance due on the note, and it became his property, we three men, Mr. Woodward, Mr. Wilson,

and myself, were standing there together.   Mr. Wilson asked him if he had no objection to our keeping this note, and he said, 'No.'   And under those circumstances we retained and still retain that note in our possession, after the transaction was completed on the part of Mr. Woodward."   Cook had, however, before the trial given a deposition in which he made this statement as to the transaction: "And in order to retire this original note these three notes of Mr. Campbell furnished the amount as stated, $2,547.48. That, however, was not an absolute payment. It was based on the ability and the payment of these notes by Mr. Campbell and nothing else. If it had been cash, then there would have been no such conditions arising here, and this note would have been in the hands of Mr. Woodward, but until  Mr.  Campbell meets his obligation that note is in our hands, and from the book entries this appears.   It is an entirely different transaction than if it had been a cash payment.   In other words, the Campbell note was looked upon by us as much better than the  Boice and Grogan note.   We took Mr. Campbell's paper believing it to be good, and, when he met that obligation, this indorsement went into force, and not at any other time.   It was not an absolute surrender of anything."   In Cook's statement on the trial he says, in effect, that, after Woodward paid the $274.88 on the old note, it became his property and was simply retained by the bank for him.   In his testimony given in his deposition before the trial, he states, in substance, that the Campbell notes were simply taken as collateral security for the payment of the old note for $2,822.34, which they held.   The jury might have credited his statement in the deposition and disregarded his testimony on the trial, and so the question

arises: Was the bank a bona fide holder in either view of the case as stated by him?

Section 52 of the negotiable instrument act provides: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face. (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. (3) That he took it in good faith and for value. (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Ky. St. sec. 3720b (Russell's St. sec. 1921).

Defining when paper is taken for value in secs. 25, 26, and 27 (Russell's St. secs. 1885-1887), it provides: "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes a value, and is deemed such, whether the instrument is payable on demand or at a future time." Sec. 25. "Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who become such prior to that time." Section 26. "Where the holder has a lien on the instrument arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien." Section 27.

If we accept as true the statements of the witness given in his deposition, the bank was a holder of the notes for value when it took them as collateral security for the note it held, as the bank in this event manifestly had a lien on the notes for the security of its debt. If we accept as true the statement of the witness on the trial, the bank was a holder for value

because it gave up the old note and took the Campbell notes alone for its debt. It is immaterial, therefore, which statement of the witness is received. The bank was equally a holder for value under either statement. The truth is the difference between the two statements of the witness arises rather from his inferences from the facts, than from a change of statement as to the facts that really occurred. There is nothing in the evidence justifying a rejection of his testimony; all the circumstances show that the bank took the Campbell notes to better its condition when Woodward was unable to meet the old note. It therefore necessarily follows that the court did not err in instructing the jury peremptorily to find for the bank.

It is earnestly insisted for the appellant that the court erred in putting the burden of proof on him to show that the bank was not a holder for value. On the other hand, it is insisted for the appellee that the appellant voluntarily took the burden of proof, and that the record shows the court made no ruling on the subject. The rulings of the court on the demurrer to the answer would indicate that he then held the view that the burden was on the defendant. But this was not a final order, and the ruling might have been changed on the trial. However this may be, the defendant was not prejudiced for the reason that, if we treat Cook as a witness for the bank, his testimony makes out a prima facie case for the bank as a holder for value, and there is no contradictory testimony in the record. The defendant took the burden, and introduced his proof. He has introduced all the proof he has to show that the bank was not a holder for value. The error of the court in his ruling upon the answer was entirely harmless because, under the

undisputed·facts, the peremptory instruction should
have been given for the bank under any view of the
burden of proof.

The negotiable instrument act does not change the
rule as to the burden of proof in cases of this char-
acter.   The note makes out a prima facie case for the
holder; but, when fraud in its inception is shown by
the defendant, he is entitled to a judgment unless the
plaintiff shows that he is a holder in due course.
The rule has long been that he who seeks to recover
on the ground that he is a bona fide purchaser for
value without notice must allege and prove (if de-
nied) the facts. This rule is not changed by the ne-
gotiable instrument act.   Section 59 (Russell's St.
sec. 1928), provides: "Every holder is deemed prima
facie a holder in due course; but when it is shown
that the title of any person who has negotiated the
instrument was defective, the burden is on the holder
to prove that he or  some person  under whom  he
claims, acquired the title as a holder in due course."

The bank here obtained the title to the paper from
the Boice & Grogan Lumber Company, who nego-
tiated it.   Their title was defective by reason of the
fraud in the inception of the notes, and so the burden
was on the holder to prove that it acquired the title
as a holder in due course.

The negotiable instrument act is in the main merely
a codification of the common-law rules on the sub-
jects to which it relates.   It was intended principally
to simplify the matter by declaring the rule as estab-
lished by the weight of authority.   There are few
innovations in the law merchant as before settled by
the courts.   Where it lays down a new rule, it con-
trols; but, where its language is consistent with the

rule previously recognized, it should be construed as simply declaratory of the law as it was before the adoption of the act.

Judgment affirmed.