## Jett v. Standafer, et al.

(Decided May 23, 1911.)

### Appeal from Perry Circuit Court.

1. Bills and Notes—An unconditional promise in writing to pay to the order of a specified person or bearer a certain sum of money at a fixed time is a negotiable instrument.

2. Defenses, That May be Made Against Holder for Value—The maker of a negotiable note, although it may have been procured by fraud or execution without consideration cannot assert these defenses against a party who takes the note for value and without notice of the vice in the paper.

3. Holder for Value—Collateral Security—A party who takes a negotiable note as collateral security is a holder for value to the extent of his lien, but defenses available against the payee may be made against the holder after his lien is satisfied.

4. Forged Signature—Confers no rights on a party who acquires the paper under or through such signature, and he cannot enforce the collection thereof unless the party against whom the note is asserted is estopped to make the defense that the signature was forged.

5. Contract Between Payee and Purchaser—The terms of the contract under which the purchaser of a negotiable note acquires title to it from the payee cannot be changed by the maker of the note, although it might be to his interest to do so.

JOUETT & JOUETT, WOOTON & MORGAN, for appellant.

EVERSOLE & EVERSOLE for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On September 18, 1906, the appellees executed to the Winfield Supply Company the following note—

"On or before February 1, 1907, for value received, we jointly and severally promise to pay to the order of

Winfield Supply Company, of Winfield, West Virginia, Two Hundred Dollars, with interest at six per cent. per annum from date, payable annually, until paid; and six per cent. after maturity upon principal and upon due and unpaid interest; negotiable and payable at the First National Bank of Hazard, Kentucky."

This note was endorsed before maturity by the Winfield Supply Company by H. C. Cornett, proprietor, and delivered by Cornett to appellant Jett.

Appellant brought suit upon the note, and for defense the appellees set up that it was executed without consideration and was obtained by fraud.

The evidence in behalf of appellees fully established the defense that there was no consideration for the note and that it was obtained by fraud and misrepresentation on the part of Cornett acting for the Winfield Supply Company, in which name he was doing business. The appellant Jett testified without contradiction that on September 21, 1906, Cornett offered to sell him the note for One Hundred Dollars, and upon his refusal to buy it, proposed that if Jett would become his surety on a note in the Citizens National Bank of Winchester for One Hundred Dollars he would deliver to him the Standafer note, and if the bank note was not paid at maturity the Standafer note should be his property. That he accepted this proposition and became the surety upon the note to the bank for One Hundred Dollars, taking from Cornett possession of the Standafer note. He further testified that he did not have any notice of any infirmity in the paper or that it was obtained by fraud or was without consideration, and that when the bank note fell due sixty days after its execution he was obliged to and did take it up, and thereupon under the contract with Cornett became the sole owner of the Standafer note.

Assuming that the note was executed without consideration and obtained from the Standafers by fraud and misrepresentation, and that Jett did not have any notice of the circumstances under which the note was executed, the question for decision is—can the Standafers make the defenses against Jett they could make against Cornett or a purchaser with notice of the infirmity in the paper? Of course, if Cornett had brought suit on the note, the Standafers could have defeated a recovery by showing that the note was executed without consideration or was obtained by fraud and misrepresentation, and this character of defense could have been successfully asserted by them

against any person who took the note from Cornett with notice of the vice in its execution. But the note on its face was negotiable paper, as it conformed to the requirements of a negotiable instrument as described in section 1 of the negotiable instrument act, now section 3720B of the Kentucky Statutes, and Jett did not have any notice of the manner in which it had been obtained. He was a holder in due course under section 52 of the act, which defines a holder in due course as follows:

"A holder in due course is one who takes the instrument under the following conditions: (1) that the instrument is complete and regular upon its face, (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact, (3) that he took it in good faith and for value, (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

And a holder in due course under section 57 of the act: "holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

It is said, however, that Jett is not to be treated as a holder for value as he took the note merely as collateral security to protect himself against loss on the One Hundred Dollar note. If Jett had taken the note only as collateral security to indemnify himself against loss, he would yet be a holder for value as section 25 of the act reads:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes a value, and is deemed such, whether the instrument is payable on demand or at a future time."
And section 26 provides that—

"Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

And so the Standafers could not have defeated Jett's right to recover from them the amount he was obliged to pay in taking up the bank note, but the defense would have been available as to the excess. In other words, if Jett had merely taken the note as collateral security to save him against loss on account of becoming surety for

Cornett on the One Hundred Dollar note to the bank, Jett could only recover from the Standafers an amount sufficient to fully indemnify him against the loss he had sustained in taking up the bank note, as it is provided in section 27 of the act that—

"Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

But Jett did not take the note as collateral security or for the purpose of holding it only to save him from loss on the bank note. The contract under which he obtained possession of the Standafer note vested in him the complete title to it in the event he was obliged to take up the bank note.

There is no controversy here between Cornett and Jett, and the Standafers are not in a position to assert any defense against the balance of the note after reimbursing Jett for the amount paid by him to the bank under his contract with Cornett. When the Standafers executed this negotiable paper and put it in the possession of Cornett, they cut themselves off from making any defense against it in the hands of a holder for value, as Jett was. Campbell v. Fourth National Bank, 137 Ky., 555. What consideration of value Jett gave Cornett for the note was a matter entirely between them, and the Standafers could not as against Jett raise any question as to the amount he paid for the note. His rights are to be measured alone by his contract with Cornett, and this contract the Standafers could not alter the terms of however beneficial it might be to them to do so. The note in addition to having the endorsement of the "Winfield Supply Company by H. C. Cornett," had the further endorsement "A. A. Cornett & Co. by H. C. Cornett." Why the note bore this endorsement does not appear, although there is some evidence that H. C. Cornett transacted business under the name of A. A. Cornett & Company. And it is also true that his right to do business under this name is drawn in question. But, whether or not H. C. Cornett had the right to put on the paper the endorsement "A. A. Cornett & Co., by H. C. Cornett" is not important even if we should assume that H. C. Cornett had no authority to use the name "A. A. Cornett & Co." or to so endorse the note. Jett did not acquire the note through or under the signature "A. A. Cornett & Co.," and the statute only affects parties who have acquired the paper through or

under the forged or unauthorized signature,—it being provided in section 23 of the act that—

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

The note was payable to the Winfield Supply Company, that being the business name assumed by H. C. Cornett, and it was under and through the Winfield Supply Company acting by H. C. Cornett that Jett acquired the paper.

Wherefore the judgment is reversed with directions to enter a judgment in favor of Jett giving him the relief for which he prayed.