## Barnard v. Napier, et al.

(Decided January 19, 1916.)

## Appeal from Perry Circuit Court.

1. Bills and Notes—Negotiable Instruments.—If a negotiable instrument is negotiated after it is past due, the same defenses may be made against it as if it was a non-negotiable instrument.

2. Bills and Notes—Negotiable Instruments.—If a negotiable instrument is complete and regular upon its face, the holder has a prima facie case, but when one sued for a recovery, upon the instrument, shows, by proof, that there is an infirmity in the instrument or a defect in title of some one who has negotiated the instrument, then the burden of proof is cast upon the holder to show that he or some one under whom he claims is a holder in due course.

3. Bills and Notes—Negotiable Instrument.—If all the proof shows that the holder of a negotiable instrument is a holder in due course, it is proper for the court to direct a verdict in his favor, regardless of any defense, which may be made against it, by prior parties to the instrument.

4. Fraud—Rescission—Damages.—If one is induced to make a purchase of personal property by a fraud practiced upon him, and the contract is executed by the delivery of the property to him, if, when he has knowledge of the fraud, he, within a reasonable time, rescinds the contract and returns or offers to return the property, or if the property is worthless for any purpose, his plea of fraud is a complete defense to the recovery of the purchase price, but if the property is of any value, and though aware of the fraud, he does not rescind the contract, and return or offer to return the property within a reasonable time, he cannot rely upon the fraud for a rescission, but he may plead a counter claim for recoupment of the damages suffered by him on account of the fraud.

5. Fraud—When Damages Not Recoverable.—Damages will not be recoverable for a fraud which results in no injury.

6. Sales—Warranty—Breach.—A warranty given by the seller of personal property is a part of the contract of sale, but is a collateral part, and its breach does not terminate the contract.

7. Sales—Warranty—Damages.—A warrantee may recoup himself in damages by a counter claim, for a breach of the warranty, in

an action by the seller to recover the purchase price of the property.

8. Sales—Warranty—Damages—Breach.—In order to recover damages for a breach of the warranty, the purchaser of personal property does not have to return or offer to return the property, but a breach of warranty cannot be relied upon as a complete defense, so as to bar the recovery of the purchase price, unless there has been a, return or offer to return the property, or unless the property is worthless for any purpose.

9. Sales—Warranty—Breach.—Where the representations, which constitute the warranty, are, also, a fraud, the purchaser of personal property, at an executed sale, may rely upon a breach of the warranty, or the fraud, at his election.

10. Sales—Warranty—Measure of Damages.—The measure of damages for a fraud, which induced a purchase of personal property, or a breach of the warranty, as to its quality which induced such a purchase, is the same, it being the difference between the actual value of the property, at the time of the purchase, and its value, if as it was represented to be, or warranted to be.

WOOTTON & MORGAN, BAILEY P. WOOTTON, JESSE MORGAN and E. C. WOOTTEN for appellant.

FAULKNER & FAULKNER, HOGG & JOHNSON and MILLER & WHEELER for appellees.

Opinion of the Court by Judge Hurt—Reversing.

The appellant, Fred Barnard, by his petition, alleged that the appellees, Irvine Napier and eleven others, executed and delivered their three promissory notes for the sum of $800.00, each, by which they promised to pay to Bauhard Brothers or order the sum of $800.00 by each of the notes, at the Bank of Hindman, Hindman, Kentucky, at the maturity of the notes. The notes matured on September 1st, 1909; September 1st, 1911, and September 1st, 1912, respectively. He further alleged that for a valuable consideration, and before maturity and in due course, the Bauhard Brothers sold, assigned, and transferred the notes to him and he is now the holder and owner of same, and prayed judgment against the appellees for the amounts of the notes, with the accrued interest, subject to certain credits, which had been placed upon them by Bauhard Brothers before the assignment and transfer of the notes to him.

The appellees, by their joint answer, admitted having executed the notes, but denied that either of the notes was sold or assigned or transferred to appellant before

maturity for a valuable consideration, or in due course or otherwise, or that he was now the owner and holder of them.

As a further defense they alleged that the consideration for the execution of the notes to Bauhard Brothers was a Hackney stallion; that the Bauhard Brothers, in negotiating the sale of the stallion to them, falsely represented to them that J. E. Perkins was a joint purchaser with them of the stallion and was to and would subscribe the notes and be bound with them upon the notes; that unless and until Perkins did sign the notes, that the notes would not be accepted and that no contract would have been made for the sale of the stallion, and that the notes would not be binding upon them, and that under said representations and contract they signed the notes and not otherwise; that, in fact, it was privately agreed between Bauhard Brothers and Perkins that Perkins was not to execute the notes and was not to be bound thereon, and did not sign them.

It was further alleged as an inducement to them to purchase the horse and execute the notes for the price, that Bauhard Brothers, through their agent, Dodd, falsely and fraudulently represented to appellees, that the horse was a good sire, and had been tested and that sixty per centum of the mares bred to him would produce foals; that said representations were made with the knowledge that it was untrue and with the intent that it should be relied upon by them, and that they did rely upon same and were defrauded thereby and induced to execute the notes, when, in fact, the horse was not a good sire, and not more than one per centum of the mares bred to him would produce foals, and was of no value as a stallion, and was known to be such by Bauhard Brothers, at and before the sale of him to them.

It was further alleged that appellant, whether the assignment of the notes to him was done before or after their maturity, had, at the time, actual notice and knowledge of the frauds practiced upon appellees by Bauhard Brothers in procuring the execution of the notes. The appellees, in their answer tendered a return of the horse to Bauhard Brothers upon the condition that the notes sued upon should be cancelled.

The appellees alleged that they had been damaged by the perpetration of the frauds above stated in the sum of $2,000.00, and made their answer a counter-claim

against appellant and a cross-petition against Bauhard Brothers, but personal service was not had upon Bauhard Brothers and they did not appear in the action.

The affirmative allegations of the answer and counter-claim were controverted by a reply, and in addition, the appellant again alleged that he purchased from Bauhard Brothers the three notes, in the regular course of business, and before their maturity, and that he was an innocent purchaser of each of the notes, for value, and without notice of any of the things alleged in the answer.

The affirmative allegations of the reply were controverted by agreement upon the record.

Upon the trial the court gave three instructions to the jury, by the first of which it instructed the jury to find for appellant the amounts of the notes, with the interest thereon less the credits endorsed upon them, unless it should believe from the evidence as set out in instruction No. 2.

By instruction No. 2, the jury, in substance, was directed that if it believed from the evidence that the notes were assigned by Bauhard Brothers to appellant, after they had matured, and that the consideration for the execution of the notes was a horse sold to the appellees as a stallion and for breeding purposes, and that Bauhard Brothers warranted the horse to be a reasonably sure foal getter, and that the horse was not as warranted and was not a reasonably sure foal getter, but was worthless as a stallion and for breeding purposes, to find for the appellees; and if it should believe from the evidence that the notes were assigned to the appellant after their maturity, and that before the notes were signed by the appellees, the agent of Bauhard Brothers represented to appellees that one J. E. Perkins had agreed to sign the notes and would sign same, and that the notes were not to be delivered or accepted by Bauhard Brothers or the horse considered as sold to appellees until Perkins had signed the notes, and that appellees believed that Perkins had agreed to sign the notes, and that they would not be accepted until he had done so, and that said representations were false and untrue and made to deceive appellees, and that Perkins had not agreed to sign the notes and did not do so, and that Bauhard Brothers accepted the notes without Perkins' signature, then it should find for the appellees.

The jury was further directed by this instruction, that, although it believed from the evidence that the notes were transferred to appellant before maturity, yet, if the assignment was not done in good faith, and that appellant had actual notice and knowledge of the way and manner in which the horse had been sold by Bauhard Brothers to appellees, and of the warranty thereof, if any, and the failure of the warranty, if same did fail, and of the false representations, if any, made by Bauhard Brothers to appellees, that Perkins would sign the notes before they would be accepted, and that he failed to sign same, to find for the appellees.

Instruction No. 3 directed the jury, that if it believed from the evidence that the notes were assigned to the appellant, before their maturity, for value and without notice or knowledge of the false representations, if any there were, made to appellees, and without notice or knowledge of the warranty made on the horse, if any was made, and its falure, if such there was, and without notice or knowledge of the dishonor of the notes by appellees, previous to their assignment to appellant, if any such there was, then it should find for appellant without regard to how the Bauhard Brothers became the owners of the notes.

The appellant objected to each of the instructions, and his objections being overruled, excepted.

The jury returned a verdict in favor of appellees, and thereupon a judgment was rendered, decreeing the cancellation of the notes, and the dismissal of the petition. The appellant's grounds and motion for a new trial being overruled, he has appealed to this court.

The reasons urged for a reversal of the judgment are:

First: Because the court overruled the motion of appellant for a direct verdict in his favor, at the close of the evidence for appellees, and at the close of all the evidence.

Second: Because the court erred in instructing the jury, to the prejudice of appellant.

The first of the grounds will be first considered.

Under the provisions of section 58, of the statute regulating negotiable instruments, unless the holder of such an instrument is a holder in due course, it is subject to the same defenses as if it were a non-negotiable instrument.

Section 52 of such act, provides that a holder in due course is one who takes an instrument under the following conditions:

(1) That the instrument is complete and regular upon its face.

(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

(3) That he took it in good faith and for value.

(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

Section 55 of the act provides that the title of a person who negotiates an instrument is defective when he obtained the instrument or any signature thereto by fraud, duress, or force and fear, other unlawful means, or for illegal consideration, or when he negotiates it in breach of faith, or under circumstances as amount to a fraud.

Section 56 defines notice of infirmity in an instrument or defect of title in the negotiator to be, that the person to whom it was negotiated must have actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounts to bad faith.

Hence, it follows that if at the time the notes were negotiated to appellant, they were then overdue, the appellees could make the same defenses against their collection as they could if Bauhard Brothers were the holders of the notes.

It also follows that if there was a defect in the title of Bauhard Brothers, and appellant had actual knowledge of it, at the time the notes were assigned to him, or had at that time knowledge of such facts in regard to the notes, and how they were procured to be executed, that his action in taking them amounted to bad faith upon his part, the appellees may make the same defenses against the notes as if Bauhard Brothers were still the holders of them, although they were assigned to appellant before they became overdue.

Section 59 of the act provides under what circumstances and upon whom the burden of proof rests in a trial of a suit upon a negotiable instrument. Every holder of a negotiable instrument is *prima facie* deemed to be a holder in due course, but when it is shown that

there was a defect in the title of anyone who has negotiated the note, the burden is upon the holder to prove that he or some one under whom he claims, acquired the title to the instrument in due course; that is, he must prove that he became the owner of it before it was overdue, and without notice of any previous dishonor; that he took it in good faith and for value, and that at the time it was negotiated to him he had no knowledge of any infirmity in the instrument or defect in the title of the person negotiating it to him. It was held also in the cases of Campbell v. Fourth National Bank, 137 Ky., 561, and Muir v. Edelen, 156 Ky., 212, that the burden was upon the holder to show that he was a holder in due course, when a defect was shown to be in the title of some one who has negotiated the instrument. Hence, the notes sued upon being upon their faces complete and regular, the appellant had a *prima facie* case, but when appellees offered proof of the frauds practiced by Bauhard Brothers upon them in procuring the execution of the notes, and thus showed a defect in the title of Bauhard Brothers, then the burden rested upon appellant to show, by evidence, that he was a holder of the notes in due course. If appellant is a holder in due course of the notes, then the defenses offered by appellees are unavailing. Section 57, of the statute, *supra,* provides that the holder in due course holds the negotiable instruments free from defects in the title of prior holders and free from defenses available to prior parties between themselves. If all of the evidence upon the issue, as to whether or not the holder is a holder in due course goes to support his contention that he is such, then a peremptory instruction to find a verdict for him is proper. Jett v. Standafer, 143 Ky., 787; Campbell v. Fourth National Bank, 137 Ky., 555; Asbury v. Trabue, 151 Ky., 142.

The evidence offered by appellant does not satisfactorily show that the notes were transferred to him before they were overdue, and there is some evidence for the appellees which tends to show that the notes had not been transferred to appellant until after they were past due, and hence the court was not in error in overruling appellant's motion for a direct verdict in his favor, and submitting the question as to whether the notes were negotiated to appellant after they were past due.

The record does not contain any evidence which conduces to show that appellant had any actual knowledge of any infirmity in the notes or defect in the title of Bauhard Brothers, or knowledge of such facts, that his taking of the notes amounted to bad faith on his part at the time they were negotiated to him, and the court should not have submitted such issue by any instruction to the jury. Mere suspicion that he knew something of the alleged frauds practiced in procuring the notes or that one or more of the notes had suffered dishonor, is not sufficient to justify the submission of such issue to the jury.

Instruction No. two was erroneous and prejudicial. The evidence shows that appellees, on the day that Bauhard Brothers and their agents departed from Hindman, met and organized a company or association, of which the appellee, Napier, was made chairman, and as its head intrusted with the direction of the company as an organization. They learned during the season of 1910 that the horse was not a good sire, and not a sure begetter of foals, and, as they testify, that he would not beget foals by more than one per centum of the mares bred to him, instead of sixty per centum, as was represented to them, and that he was substantially worthless for breeding purposes. It is not clear when they learned that Perkins had not signed the notes, but it was a considerable time before suit was brought, as appellee, Napier, says it was while one or more of the notes were at Hindman, in the hands of a lawyer. The notes were returned to Indiana, and went from thence to Mount Sterling and thence to the place of the bringing of the suit. The evidence of Napier indicates that it was probably a year or two before the filing of the suit, and upon the whole, it appears that it was some time before.

Fraud, by which one is induced to make a purchase of personal property, which is delivered to him, is not a complete defense so as to bar the recovery of the purchase price, unless the purchaser shall, seasonably, when he becomes aware of the fraud, rescind the contract, and return or offer to return the property to the seller, or unless the property is worthless. If the purchaser, though aware of the fraud practiced upon him, elects to retain the property, and he is sued for the price, he must rely for recoupment upon a counter-claim for damages because of the fraud, and if he succeeds upon

his counter-claim, his recovery may be set off against the price, *pro tanto*. 35 Cyc., 542, 548; Thornton v. Johnson, 2 B. M., 459; Baine v. Wilson, 1 J. J. M., 202; Hardwick v. Hardwick, 4 Bibb, 569; Stone v. Ramsey, 4 T. B. M., 236; Hord v. Chandler, 12 B. M., 403.

It was error for the court to instruct the jury that if the notes were acquired by appellant after their maturity, and appellant's agents had secured the execution of the notes by them by the fraudulent representation that Perkins had agreed to and was to sign the notes, and that they would not be delivered to Bauhard Brothers unless Perkins did sign them, and that appellees believed that Perkins had agreed to execute the notes, and these representations were false, to find for appellees. The appellees received the horse for these notes, and never rescinded the contract, nor returned or offered to return the horse, after learning that Perkins had not executed the notes, and hence the fraud, if any, perpetrated by the representations in regard to Perkins, if any, was not a defense to the notes sued on, but could only be relied upon by counter-claim for damages. This is not a state of case where one is fraudulently induced to sign a note as surety, upon the representation of the payee that a certain solvent man is also to sign as surety, and that the note will not be accepted unless such other individual signs as surety, also. The appellees are principals, and received the horse and retained him, by reason of the execution of the notes. The question now arises, what damages did the appellees incur by the failure of Perkins to sign the notes? The portion of the total sum of the notes, which it was mutually agreed that Perkins was to pay, the sum of $200.00, had been credited upon the notes, and appellant is not seeking to recover that sum of appellees. It is only the sums which appellees agreed to pay which is sought to be recovered of them. It is not plead nor was there any proof that either of the appellees was insolvent or unable to pay his proportional part of the notes. It is an elementary principle that one cannot recover damages because of a fraud, which does not result in an injury. Hence, it does not seem that there is any ground for recovery of damages on account of the allegations and proof pertaining to Perkins' failure to execute the notes, and it was error for the court to give any instruction upon the subject.

It was likewise error for the court to instruct the jury that if the notes were negotiated to appellant, after their maturity, and the consideration for their execution was a stallion, which Bauhard Brothers warranted to be a reasonably sure foal getter, and the horse was not as warranted and was not·a reasonably sure foal getter, but was worthless as a stallion and for breeding purposes, to find for appellees. A warranty made in the contract of sale of property to induce the purchase is a part of the contract, but is collateral to the main purpose of the contract, and its breach does not terminate the contract. If one is sued for the price of goods, which he purchased under a contract, which contained a warranty, and there has been a breach of it, if it was an executed sale, he may rely upon the breach in a counter-claim for damages, and his counter-claim will be a defense to the action for the price, *pro tanto.* Cook v. Gray, 2 Bush, 121; Culver v. Blake, 6 B. M., 528; 35 Cyc., 441. In order to avail himself of a breach of warranty by a counter-claim for damages, the purchaser does not have to return or offer to return the property unless the contract required him to do so, but a breach of warranty is not a complete defense to an action for the price, so as to bar the recovery of the price, unless there has been a return or offer to return the property, or it is worthless for any purpose. McCormick Harvesting Machine Co. v. Arnold, 116 Ky., 508; Miller v. Gaither, 3 Bush, 152; Culver v. Blake, 6 B. M., 528, *supra;* Millett v. Forman, 3 J. J. M., 292; Robinson v. Bright's Extx., 3 Bibb, 31; Leasbury Mfg. Co. v. Waller, 18 R., 346.

The allegations in appellees' counter-claim, as to the representations made by Bauhard Brothers, as to the quality of the horse for breeding, being representations made by Bauhard Brothers to induce the purchase of the horse, and intended to be·relied upon by appellees, and relied upon by appellees, if false and known to be such when made, constitutes a fraudulent warranty, and appellees have the election to rely upon the representations as a fraud upon them, or as a warranty. Harrigan v. Advance Thresher Co., 26 R., 317; Ruby Carriage Co. v. Kremer, 26 R., 274; Massie v. Crawford, 3 T. B. M., 218. If relied upon as a fraud upon them, in order to succeed they would have to show that the representations were known to be false when made; if relied

upon as a warranty, it is immaterial whether the makers of the representations knew them to be false or not.

The measure of damages, which appellees may recover upon a counter-claim for breach of warranty, or for fraud, is the same in this case. It is the difference, at the time of the sale, between the actual value of the horse, and his value, if he was as represented or as he was warranted to be.

In view of the instructions asked, the court should have instructed the jury to find for appellant the amount of the notes sued on, with their interest, subject to the credits endorsed upon them.

The court should have, also, by proper instructions, submitted to the jury the issue as to whether or not the notes were negotiated to appellant, after they were past due, and if so, and it further believed that Bauhard Brothers or their agent made the representations which constituted the warranty relied upon, and the warranty was broken, to find for appellees the damages they suffered by such breach, not exceeding the sum sought in the counter-claim, and the converse of such instruction, and, also, an instruction defining the measure of damages to which appellees were entitled, if a finding should be for them upon the counter-claim. The finding upon the counter-claim can be set off against the amount of the notes, to their extent, but no judgment can be rendered against appellant for any excess, as he did not make the warranty.

There was no proof conducing to show that Bauhard Brothers, or their agent, knew that the representations made by them in reference to the qualities and soundness of the horse, were not true when made, and hence, no instruction should have been given allowing a recovery by appellees upon the ground that the representations worked a fraud upon them, and besides the appellees are not entitled to recover upon the representations being a warranty, and also, because they constituted a fraud. They must elect one or the other remedy.

For the reasons indicated, the judgment is reversed, and the cause remanded for proceedings in conformity to this opinion.