FIRST NATIONAL BANK OF APPLETON, Respondent, vs. NAYLOR, Appellant.

*March 7—April 11, 1933.*

226

The cause was submitted for the appellant on the brief of *Bradford, Bradford & Derber* of Appleton, and for the respondent on that of *Frank & Pelkey* of Appleton.

FRITZ, J. This action was brought to recover $2,600 and interest on a promissory note, dated August 24, 1931, payable six months after its date to the order of Associated Property Holders, Inc., and delivered by the latter to plaintiff on September 18, 1931. The evidence which was admitted on the trial established the following facts without any material conflict: Defendant was a stockholder of the Associated Property Holders, Inc., which in August, 1931, was indebted to plaintiff on its collaterized note, in which it had agreed to deliver to plaintiff additional securities or make payments on account to plaintiff's satisfaction should the market value of the collateral suffer any decline. Under that agreement, plaintiff in August, 1931, requested William L. Crow, who was the president of the Associated Property Holders, Inc., to have the stockholders of the corporation indorse the note held by plaintiff. Crow offered as a substitute to obtain notes from the individual stockholders, and deliver them to plaintiff as additional security. Plaintiff accepted that offer. A meeting of some of the stockholders was held on August 21, 1931, but it does not appear that plaintiff was represented at that meeting or that it had knowl-

edge of any agreement which may have been made between the stockholders at that meeting. Crow obtained notes from most of the stockholders, including the note of the defendant upon which this action is based. Crow held that note until September 17, 1931, when plaintiff's cashier telephoned to him, and told him that the value of the corporation's collateral had declined so that it was necessary to obtain additional collateral to secure the corporation's indebtedness to plaintiff, which then amounted to $55,800. Crow said that he had the notes of stockholders, and that he could send defendant's note for $2,600. The cashier told Crow to send it, and that evening at Madison, Wisconsin, Crow sent the note in suit by mail to plaintiff, who received it at Appleton at 8 a. m. the next morning. About half an hour later, plaintiff's cashier again telephoned to Crow and told him that the defendant's note had been received; that plaintiff needed additional collateral, but did not want any more notes; and that unless given additional collateral, plaintiff would have to sell the collateral. About 11 a. m. plaintiff sold as much of the collateral as it could get a fair market price for. Between September 18, 1931, and the time of the trial of this action, enough had been realized on the sale of bonds up as collateral to reduce the corporation's indebtedness to about $23,000. To secure that balance, plaintiff held $18,000 worth of collateral, which included the note in suit.

Defendant in his answer had alleged (1) that the stockholders' notes had been signed under an agreement between the stockholders and the corporation that the notes were not to be delivered to plaintiff unless plaintiff agreed not to sell the securities which it was holding, and also agreed to allow the corporation more time to pay on its loan; (2) that plaintiff knew that defendant's note was not the corporation's property except for that special purpose; and (3) that before defendant's note was sent to plaintiff, it had agreed

to refrain from selling the securities, and from pressing or demanding immediate payment of the corporation's loan. No evidence was offered by defendant on the trial in support of the defenses above numbered (2) and (3). He did offer to prove that an agreement had been entered into between the corporation and its stockholders as stated in the defense above numbered (1); the purpose for which defendant executed the note in suit; and the consideration that moved between the defendant and the corporation for that note. However, the court's rulings limited the case solely to transactions between the stockholders and the plaintiff, and excluded all proof as to any transactions between the stockholders and the corporation. As there was no evidence introduced or offered tending to establish that plaintiff was represented at the stockholders' meeting, or that it was otherwise chargeable with knowledge of any agreement between the stockholders and the corporation, in relation to the consideration or the purpose for which the note in suit was executed and delivered by defendant to Crow, the court rightly excluded the proof offered in support of those matters, unless the plaintiff was not a holder in due course of the note in suit.

If plaintiff was a holder in due course, then, under the facts established on the trial, not only was the exclusion of that offered proof proper, but the court rightly granted the motion by plaintiff for a directed verdict. The record discloses that the note was taken by the plaintiff under all of the conditions which are requisite under sec. 116.57, Stats., to constitute the holder of a negotiable instrument a holder in due course. No proof was received, and no competent proof was offered, which tended to establish that plaintiff had notice or knowledge of any infirmity or defect in the instrument or in the right or title of the corporation negotiating it, or of any facts because of which it can be held,

within the contemplation of sec. 116.61, Stats., that plaintiff's action in taking the note amounted to bad faith. On the other hand, the condition that in order to constitute plaintiff a holder in due course there must have been value or consideration for the taking of the instrument is satisfied by the fact that the note in suit was demanded and delivered to plaintiff as additional security, under and in performance of the corporation's binding, contractual obligation to that effect in the corporation's note, which was held by the plaintiff. Plaintiff's right, by virtue of that binding contract with the corporation, to additional security constituted sufficient consideration to render plaintiff a holder in due course, without any agreement on its part for an extension of the time of payment or other forbearance. But, even if plaintiff had not been entitled to additional collateral by virtue of the corporation's existing contractual obligation, under the Uniform Negotiable Instruments Act, the existing antecedent debt afforded sufficient consideration to render plaintiff, upon accepting the note before maturity as collateral security for that debt, a holder for value. *Prahl v. Boehme,* 191 Wis. 243, 210 N. W. 821. In addition to the authorities there cited see *American Nat. Bank v. Kerley,* 109 Oreg. 155, 220 Pac. 116, 32 A. L. R. 262, 286; *McLaughlin-Gormley-King Co. v. Hauser,* 195 Iowa, 224, 191 N. W. 880; *Campbell v. Fourth Nat. Bank,* 137 Ky. 555, 126 S. W. 114. The earlier decision in *Badger M. Co. v. United States B. & T. Co.* 166 Wis. 18, 163 N. W. 188, which is to the contrary as regards the ultimate result, is no longer in point, because the decision was predicated entirely upon sec. 1675—51, Stats., which was repealed in 1917, and which was not embodied in the Uniform Negotiable Instruments Act as enacted in other states.

Defendant attempted to prove that his note had not been received by plaintiff as collateral security for the corpora-

tion's indebtedness, by offering his testimony that another person, Dr. Reineck, had told defendant that, in a telephone conversation between Dr. Reineck and plaintiff's president, the latter had said that defendant's note had not been received as part of the collateral. At the time of that telephone conversation defendant overheard Dr. Reineck speaking, but did not then hear what was being said over the telephone by the person who was speaking to Dr. Reineck. Manifestly, under those circumstances the statement to plaintiff by Dr. Reineck as to what the latter had heard is purely hearsay, and therefore defendant's testimony as to that statement was not admissible. Defendant's contentions that errors were committed by the exclusion of evidence in several other respects have been duly considered, but afford no basis for reversal.

*By the Court.*—Judgment affirmed.