## Interstate Acceptance Corporation v. Humphress.

March 8, 1949.

Wade & Mapother for appellant.

Morris & Garlove for appellee.

OPINION OF THE COURT BY JUDGE HELM—Reversing.

Appellant sought to recover an automobile, or its value, under a conditional sales contract filed as an exhibit with the petition.

Upon the conclusion of the evidence at the trial in the lower court, the trial judge peremptorily instructed the jury to return a verdict for appellee. This is an appeal from the judgment entered upon that verdict.

Appellant alleges that it is the owner of a certain 1942 Chevrolet automobile, that appellee had failed to make payments in accordance with the conditional sales contract covering the automobile and prayed judgment for the immediate possession of the automobile or its value of $800.

In his amended answer appellee pleaded: ''Defendant states that he did not, at any time, receive anything of value from the plaintiff or plaintiff's assignor; that there is and was no consideration for the instrument purporting to be a conditional sales contract filed with plaintiff's petition; that defendant is not now and never was indebted in any respect to Priddy Auto Sales, plaintiff's alleged assignor; and that neither Priddy Auto Sales nor William Priddy ever owned, or had any interest in the automobile described in plaintiff's petition.''

For the convenience of the court, counsel lists the following ''cast of characters'':

William L. Veech, owner of a Chevrolet automobile.

W. B. Sondergeld, a garage man and Veech's agent.

William Priddy of Priddy Auto Sales, a dealer.

R. E. Benson, manager of Interstate Acceptance Corporation.

Veech, the owner of the automobile in question, took it to Sondergeld for repairs, decided to dispose of it

and commissioned Sondergeld to sell it for him. Priddy saw the automobile at Sondergeld's garage. Sondergeld permitted Priddy to take the automobile to his place of business. While the car was on Priddy's lot, he obtained a floor plan loan from Interstate on this and three other cars by executing a chattel mortgage to Interstate on January 30, 1947, for $1,042.25, which amount he received and deposited to his account. $700 of this loan was charged against the car in question.

A few days later Veech, while at Sondergeld's garage, found that his car was not there. He directed Sondergeld to bring it back to his garage, which he did.

Appellee seeing the car on Sondergeld's lot wished to buy it. He made a down payment of $200 and talked to the First National Bank about borrowing the additional $600 but decided not to obtain this loan. Sondergeld then took him to Priddy to obtain a loan. Priddy told appellee that it would cost him $150 to finance the car. Appellee then signed a ''Kentucky conditional sales contract'' in blank. Later Priddy filled out the blank, showing cash price of $975, cash payment of $325, unpaid balance of $650, finance charges of $201.85 and time balance of $851.85. Priddy negotiated the contract as completed to Interstate on February 18, 1947, obtaining a check from Interstate for $650. Priddy, in turn, endorsed the check and delivered it to Interstate, along with $50 in cash, in settlement of the $700 charged against the car in the floor plan loan which he had obtained on January 30, 1947.

Later, appellee received notice of the transfer of the amount named in the contract. He told appellant by 'phone that the contract called for a larger amount than Priddy had reported to him and that he would procure the money elsewhere. Appellee thereupon, on February 24, 1947, borrowed the balance of the purchase price ($600) from a bank and paid it directly to Sondergeld, Veech's agent. Sondergeld in turn paid Veech. At the same time Humphress obtained a bill of sale for and possession of the car.

In the chattel mortgage of January 30, 1947, Priddy by affidavit, subscribed and sworn to before R. E. Benson, manager for Interstate and a notary public, swore that he was the owner of the Chevrolet car in question.

Appellee contends that Priddy did not have title to the car. Appellant admits that this is true, saying: "These facts clearly indicate that Priddy did not have title to the automobile; but they just as clearly indicate that title did not flow through Priddy but directly to (from) the owner, Veech, by reason of his actions in constituting Sondergeld as his agent to make the sale. * * * The facts show that Veech, the owner, not only constituted Sondergeld, the garage man, to do anything necessary to sell the automobile, but also gave him bills of sale executed in blank; that the owner's agent did everything in his power to sell the automobile to the purchaser, including a direction to the purchaser to execute and deliver an installment contract to Priddy; and that, after complying with this direction, the agent delivered possession of the automobile and bills of sale to the purchaser," the appellee. (Parenthesis ours.)

Benson for Interstate testifies that he had a bill of sale signed in blank by Veech from January 30 to February 18, 1947, and also a Kentucky certificate or license for the car from January 30 to February 18, 1947. Veech's signature to the bill of sale, from a comparison of the handwritings, appears to be his signature. The certificate or license is signed "William L. Veech, by Shelby Humphress." From a comparison of the handwritings in the record, it appears that the words "Shelby Humphress" were not written by Humphress.

Tobey, the county clerk, testified you could obtain a copy of a certificate or license for 50 cents. He further says that by the records of his office, it appears that William McGibbins sold the car to Veech on May 31, 1946, and that there were not any transfers of this car from that date until it was transferred to Humphress on March 3, 1947.

The bill of sale purports to have been subscribed and sworn to by Veech on January 30, 1947. Veech states that this is not true. Veech testified that he did not sign the bill of sale which is dated January 30, 1947, until after the car had been brought back from Priddy's lot to Sondergeld's garage and not until about the time Humphress obtained the money from the bank.

Sondergeld states that the bill of sale was not made out until Humphress made payment on February 24,

1947. Sondergeld says that he took the papers to Priddy to notarize them and then went down to the courthouse and transferred them to Humphress. When asked to explain the January 30 date, Sondergeld says, "The only thing I could say about that was that Priddy went ahead and put the date, the wrong date, on the title." Sondergeld stated that the bill of sale was not signed by Veech at any time before he and Veech signed a receipt for $450, dated February 24, 1947, which he gave to Humphress. This receipt is filed as an exhibit.

Appellee says in his brief: "Priddy was not appellee's agent. Appellee had no agent. He paid the full purchase price for the car to the owner thereof. He received nothing from Priddy and nothing from appellant. He merely undertook to buy a secondhand car and, in so doing, got himself enmeshed in a tangle of double dealing, check kiting and miscellaneous chicanery. He was, in truth, a lamb among wolves. The only mistake he made was in signing the finance papers in blank; but as soon as he discovered that the finance cost had been misrepresented, he notified appellant and procured the money elsewhere."

Priddy did not testify. It appears from the record that he has left Louisville owing Interstate and Sondergeld considerable sums of money.

KRS 356.052 provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That the instrument is complete and regular upon its face.

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"(3) That he took it in good faith and for value.

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

KRS 356.055 provides: "The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or

any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.''

KRS 356.056 provides: ''To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.''

KRS 356.058 provides: ''In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. * * *''

KRS 356.059 provides: ''Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. * * *''

In Barnard v. Napier, 167 Ky. 824, 181 S.W. 624, 627, we said: ''Every holder of a negotiable instrument is prima facie deemed to be a holder in due course, but, when it is shown that there was a defect in the title of any one who has negotiated the note, the burden is upon the holder to prove that he or some one under whom he claims acquired the title to the instrument in due course; * * * that he took it in good faith and for value, and that at the time it was negotiated to him he had no knowledge of any infirmity in the instrument or defect in the title of the person negotiating it to him. It was held also in the cases of Campbell v. Fourth National Bank [of Cincinnati], 137 Ky. [555] 561, 126 S.W. 114 and Muir v. Edelen, 156 Ky. 212, 160 S.W. 1048, that the burden was upon the holder to show that he was a holder in due course, when a defect was shown to be in the title of some one who has negotiated the instrument. * * * When appellees offered proof of the frauds practiced by Bauhard Bros. upon them in procuring the execution of the notes, and thus showed a defect in the title of Bauhard Bros., then the burden rested upon appellant to show by evidence that he was a holder of the notes in due course.''

It follows that if there was a defect in the title and appellant had actual knowledge of it or knowledge of such facts that its action in taking the instrument amounted to bad faith at the time the contract was assigned to it, it was not a holder in due course.

The testimony was sharply conflicting. In our opinion the questions in issue should have been submitted to the jury under proper instructions.

The judgment of the circuit court is reversed for proceedings not inconsistent with this opinion.